Chief Justice Simpsom
delivered tlie opinion of the Court.
The questions involved in the determination of this case, depend upon the construction that shall be given to some of the devises contained in the will of Alfred Shelby, deceased. This will, as it respects some of its provisions, has been heretofore construed by this Court. (1, Ben. Monroe, 266.) But events which have since transpired, have created a new state of case, and given rise to new and undecided questions among the parties now interested.
Alfred Shelby had four children, two of whom only, viz; Isaac and Susan, had been born at the time he executed his will. By the first clause in his will, he loaned to his wife all his lands, negroes, stock, &c., until the expiration of the minority of his eldest son, or her marriage again.
*630 By the second clause, he devised to his son Isaac, on his arriving at age, the farm, (Traveller’s Rest,) with ali the lands appertaining to it; also, six of the choice of his negroes, and an equal half of all the others under fifty years of age, &c.
In the fourth clause he bequeathed to his son one thousand dollars on his arriving at age to purchase stock for his farm.
The testator died in December, 1832. Sarah, one of his chileren, born after the execution of his will, and who inherited part of his estate, being pretermitted in the will, died when she was quite young. Pier brothers, Isaac and Alfred, and her sister Susan, inherited from her, in equal portions, the land which had descended to her from her father. Pier slaves and personalty were distributed among her brothers, sister, and mother.
In April, 1847, during Isaac’s minority, his mother intermarried with Robert J. Breckenridge. Virginia Breckenridge is the offspring of this intermarriage, and-was born on the 10th day of February, 1848. On the 24th of the same month, her half brother, Alfred Shelby, departed this life, an infant, unmarried and intestate} leaving his half sister, Virginia Breckenridge, then a few days old, and his brother and sister of the full blood and his mother, the heirs and distributees of his estate in equal portions. Isaac Shelby, the oldest son- of Alfred Shelby also died in December, 1848, during his minority, intestate and without issue, leaving his mother and his two sisters one of half, and the other of full blood, his heirs and distributees.
This suit was instituted in the name of Virginia Breckenridge, the half sister, by her next friend, John C. Breckenridge, to which her father and mother and half sister, Susan Shelby, were made parties. The object of the suit was, to settle and define the rights of the parties in the estate, in its present changed condition, resulting from the death of the two brothers, Alfred and Isaac Shelby. During the pendency of the suit, Susan Shelby intermarried with J. W. Grigsby,, who was made a defendant.
The clause of Virginia Giigsby asserted in her answer.
Where an infant having title to real estate dies without issue, half brothers or sisters by the mother will inherit the estate as heiis of the infant: (Clay, &c. vs Cousins, &c. (1 Monroe, 7ñ.l
The intention of the testator as to the time when a legacy is to vest, is the rule by which to determine when it vests—to be determined by the terms used and the rules established by adjudications or the construing of devises.
In the answer filed for Susan by her guardian ad ■litem, whilst she was an infant, and before hermarriage, the position was assumed that she is entitled to all the real estate that belonged to her father, and to which her deceased brothers and sister had title from him-, either by devise or descent, and that her half sister, Virginia, is not legally entitled to any part of it. This position, however, cannot be maintained.
It was decided in the case of Clay &c. vs Cousins &c., (1, Monroe, 75,) and such has been the received and settled construction of the statute of descents since that time, that where an infant having title to real'estate derived from the father dies without issue, that-half brothers or sisters by the mother will inherit the estate as heirs of the infant. The right, therefore, of the complainant to a portion of the estate that belohgedto her half brothers at -the time of their death, Is clear and incontestible.
But the principal question to be considered, and the one that involves the construction of the will of Alfred :Shelby-is, what estate did in fact belong to Isaac at the time of his death ? Did he take a vested estate under his father’s will in the tract of land and slaves devised to him, or did his estate consist only of that which had descended to him from his deceased brothers, and from his father, as one of his heirs?
It is contended that the devise of the farm (Travel-ler’s Rest) and the slaves to him, on his arriving at age, w-as a contingent devise, and took effect only in the event that he lived until that time, and having died previously, that nothing passed to him by the devise.
When expressions relating to a future period are introduced into a devise, the question naturally arises whether they are inserted for the purpose of postponing the vesting, or are intended merely to indicate that the possession or enjoyment is to be deferred until the time designated. The solution of this question in every case must depend upon the intention of the testator deducible from considerations arising on the farce of *632 the will; and the legal exposition and effect of similar devises according to the adjudged cases and settled rules of construction upon the subject.
A devise was made to the wife until the son ar-live at 21 years old, then to him absolutely, or if the mother marry then her interest to cease without any devise over in ease of the death of the son or the mairiage of the mother before the sons arrival at 21. Held that the son took a vested interest.
The whole will, so far as it relates express!y to the farm (Traveller’s Rest) and the slaves, presents the case of a devise to the mother, until the son attains’the age of twenty-one, and- to him absolutely at that period. No other disposition is made of it, nor does the will contain any expression indicating an intention to protract the vesting of the estate to any future period beyond the death of the testator. .The interest of the mother-, in the event of her marriage, was to determine before the period designated at which the son was to enter into the enjoyment of the property, but no other disposition of the farm was made upon the happening of that contingency. It is evident that the testator regarded it as having been devised to the son, and as‘belonging to him, but as he would not be capable of managing it during his minority, the use of it was given to his mother until his minority terminated, if she remained unmarried. Provision also was made for the support and education of the son until that time, and when it arrived, he was to have one thousand dollars to purchase stock for his farm. Thus demonstrating clearly that according to the intention and understanding of the testator, the farm was devised to him absolutely and unconditionally. It is evident that the testator did not contemplate the event referred to ; that is, the arrival of the son at majority, as uncertain and contingent, but seems to have regarded it as one that would naturally and certainly occur, for if he had regarded it as doubtful, it can hardly be supposed he would have failed to make some devise over, upon the event not happening, especially as it may be presumed that he did not intend to die intestate as to any part of his estate, inasmuch as he seems to have disposed of the whole of it in his will. He did not say, if his son arrived at age he was to have the farm, or use language clearly importing a contingen'cy, but devised it to him *633 on his arriving at age, thus speaking of it as an event that would certainly happen.
Though a devise be mude in words thut apparently create a it n re estate, an seem to im-porta continúen. ey, such words, if a prior interest has hern carved out of the estate, will be eon* stmed merely as referring to the futurity of possession oceas'on ed hv the carving out of Ihe particular inetesl, <St not to protmet 1he vestingoftba estate: Feme on Rem., 242 In248 (7 73. Monroe, 623.)
A remainder may be valid to take effect upon ihe determinad t on.of a particular estáte, the particular estate inay be raadg to determine upon any event, and the remainder then to be enjoyed: (Coke Litt 298. Ferne on Rem., 308.)
The doctrine is well settled, that when a devise is made in words that are apparently creative of a future estate, and that even import a contingency,such words, if a prior interest has been carved out of the estate, will be construed as referring merely to the futurity of possession occasioned by the carving out of a prior interest, and as pointing out the determination of that interest, and not as designed to protract the vesting. The cases that fall within this cla*s are collected and stated at length, in (Fearne on remainders, 242 to 246,) and are, together with some others, referred to in the case of Danforth vs Talbot's Administrator, (7, Ben. Monroe, 623.)
.According to this doctrine, as a prior interest had been carved out of the estate and given to the mother which might continue until the time designated fpr the son to have the possession, the designation of that time must be regarded as having been made to point out the determination of the prior interest and as referring merely to the futurity of the possession.
It is contended, however, that as the prior, interest, by the marriage of the mother, might determine before the period referred to, that this case does not come within the principle settled in the cases above mentioned, and that as the particular estate to the mother might be determined before the remainder to the son was to take effect, the latter might fail for the want of a particular estate to support it, and was consequently contingent.
One defect in the argument consists in the assumption that the estate devised to the son was strictly a remainder. It was in effect a devise of the whole estate to the son, subject merely to an interest, taken out of it by the testator, and applied to the use of the mother. In such cases, the expressions connected with the devise of the estate relating to.a future period or >svent, are construed merely as pointing out the deter *634 mination of the prior interest, and the commencement of the possession of the devisee and are rteemed to have been used for that purpose only, by the testator and not to postpone the vesting of the estate. This construction prevails, because it is supposed to be consistent with the intention of the testator. Is not his intention as strongly evinced, where the interest he has carved out of the estate may continue, as where it must necessarily continue until the time referred to? In both cases he evidently, by using words apparently creating a future estate, alludes to the futurity of possession and enjoyment to take effect, in the one case, at the time the prior interest may, and in the other, when it must cease and determine-. He does not mean that the estate shall not vest until the prior interest determines, but that it shall vest subject to that prior interest which he has carved out of it, and take effect in enjoyment, upon the event referred to, which, according to the manner in which the subject has heen viewed by him, he contemplates as the period when the prior interest will end.
If, however, the estate devised to the soil were to be regarded as a technical legal remainder, after the expiration of the particular estate given to the mother, it would still be a valid remainder and one that vested immediately upon the death of the testator. Ihe particular estate to the mother was to continue during the minority of the son, unless the mother chose to terminate it sooner by her marriage. Upon the death of the testator, by the provisions of his will, the mother took a defeasible estate, during the minority of her son, remainder to the son in fee. Now, when a vested remainder rests upon good title, and not upon the defeasi-ble title of the particular estate, it will remain valid, though the particular estate be defeated : as in the case put by Coke of a lease to an infant for life, remainder to Bin fee; though the infant disagree to the estate for life when he comes of age, yet the remainder shalL stand, having once been vested by a good title. (Co. *635 Litt. 298, a.) So in the cases stated in Fearne on remainders, page 308, as instances of vested remainders taking effect, though the preceding estate be defealed. As if a lease be made to A, for the life of B, the remainder to C in fee; A, dieth before B, now, (at common law,) before the entry of an occupant, there was no particular estate, and yet the remainder continued good. So in the present case, though the mother might, by marrying, defeat the particular estate which was given to her by the will during the son’s minority, upon the condition she remained unmarried, yet as the re' mainder would vest in the son before her marriage, and he would thereby acquire a good title, his title would continue good,.notwithstanding his mother, by marry--ing defeated and determined the particular estate given*, to herself.
But we put the case upon the broad gi'ound that the son took a vested estate in the property devised to him-in the second clause of the-will, according to the manifest intention of the testator, ascertained as well by a reference to the particular language used, and the general provisions of the will,.as to those well settled prin--ciples of construction, which have been adopted and" applied in similar cases,. And that the words used in* limiting the estate, or the remainder if it may he so •• termed to the son, which seem to import a contingency were not used for that purpose, but only to denote the time when the remainder-was to vest ■ itr possession,, and did nat amount to a condition precedent, or make-his right to.the estate devised, depend'upon his living to the age of twenty-one. It was in effect a devise of the whole estate instanter to. the son, with the exception of a.partial interest carved out of it, and which extended (subject, however,.to a defeasance) over the whole period for which the enjoyment of the devise to the son was postponed.
As the testator provided for the support and education of his son during his minority, and fixed definitely the period at which he was to have the possession and *636 enjoyment of the estate devised to him, and made no disposition of the rents and hires in the event of the previous determination of the prior interest that might accrue in the interval between the cessation of one estate and the commencement of the other in possession, such rents and hires constituted a portion of his estate in the hands of his executors, subject to distribution as in the case of intestacy; especially as it may be presumed that as the testator provided for the determination of the interest of the mother upon the contingency of her marriage,he would, if such had been his intention and desire, directs that the estate devised to the son should, upon the happening of that event, pass immediately into his possession. They do not, however, seem to have been distributed in this manner bv the Court below; but Grigsby and wife have no reason to com] lain of the distribution directed to be made, as they obtain thereby a larger portion of the fund than they would if it were correctly distributed.
A legacy of @1000 to be paid to the son on his arrival at 21 years of age to parchase stock for his farm, the son died before 21. Held that the legacy was contingent and never vested.
Though the moth er in not entitled to any pan of land descended to her ch Idren fiom their father yet (ha is anti. †led to parts of that wli'ieh. they inherit from each ofher, ihough originally inherited from ihe lather: (6 J. J. Marshall, 47.
*636 We are inclined to the opinion that the legacy of one thousand dollars bequeathed to Isaac, on his arriving at age, was, according to the settled rules upon the subject a contingent and not a vested legacy. The terms in which the bequest were made, and the object to which the money was to be applied, also seem to. favor such a construction. It was given to the legatee on his aniving at age, to purchase stock for his farm. If he died during his minority, it could not be thus ap-, plied, and the object of the bequest would fail entirely. But it is not material, whether it be a contingent or a vested remainder, for as it was held to be a vested remainder, by the Court below, and as that decision is to the advantage of the plaintiff’s in error, they ought not to complain of it.
Although the mother was not entitled to any part of the real estate belonging to her deceased children, to which they had derived title from their father, yet she had a right to a share in that part of it, which they had inherited from each other, upon the death of either; *637 she being excluded only where the estate came immediately from th & father himself: Duncan vs Laferty’s administrator, (6 J. J. Marshall, 47.) As to the sin ves and personalty, she was not excluded, but was entitled to a share with the other distributees.
Harlan,and C. S. Morehead, for plaintiff’s; Robertson, for Mrs. Breckinridge; Robinson and Johnson, for Miss Breckinridge.
The estate, except the legacy to Isaac, and the fents of the land and hires of the slaves accruing, after the marriage of Mrs. Breckinridge, and before Isaac’s majority, lias been disposed of by the decree of the Circuit Court, consistently with the principles herein settled. And there is no error, to the prejudice of Grigsby and wife, in the manner in which said legacy, and rents and hires have been disposed of.
Wherefore, there being no error in the decree of the Court below, to the prejudice of the plaintiff’s in error it is affirmed.