JUDGE DUVALL
delivered the opinion of the court:
By the will of Isaac Cunningham, dated the 28th July, 1842, and admitted to record in November of the same year, the testator devised to his wife, during her life, four hundred acres o f land, and numerous slaves.
To his two grand-sons, Solomon and Isaac C. Vanmeter, he devised “ the four hundred and five acres of land I own in Fay-ette county, originally bought of Pain and Taylor. I have also given them four negro boys, Anderson to Solomon, and Anthony to Isaac C. Vanmeter; the small boys, Josh and Caesar, I leave them to divide between themselves. I have also given them some horses, cows, and hogs.”
“ Thirdly. I give to my grand-son, Jacob Vanmeter, when he arrives at the age of twenty-one, two hundred acres of land, to be bought by my executors, equal in value to each of the lands I have given to Solomon and Isaac C. Vanmeter; and it is my *267 will that he shall have two negro boys of equal value to those I have given each of them; and that he shall have horses, cattle, &c., equal to the stock each of them got; if not stock, its value in money.
“ Fourthly. It is my will that the balance of my lands be all put in grass, and rented out for the benefit of the estate; and as the others of my grand-children become of the age of twenty-one years, each one shall draw from the estate two hundred acres of my land, and the boys each to draw two negroes of the male part of my servants, equal in value to those I have given the other boys. The girls, each, shall have one woman and a girl, of as near equal value as they can me made. It is my will that my executors lay off four hundred acres of my land, adjoining Isaac "Vanmeter’s land, extending the full length of my farm on the west side, not to run south further than the land I bought of the Crocketts; this I give to the two youngest of my grand-children when they become tweiity-one years of age, to be divided between them equally, each one to have the benefit of the spring and creek for water.
“ Fifthly. It is my will that each one of the younger children, as they become of age, draw from the estate horses, cattle, &c., of equal value to what I have given the boys of age; if not the stock, its value in money.”
By the succeeding clauses, the testator appoints his three grand-sons, Solomon, Isaac C., and Jacob Vanmeter, his executors; directs a sale of all the balance of his estate, and a division of “ the dower negroes ” among his grand-children; and he provides finally, that “ if the estate produces at any time a fund sufficient to purchase two hundred acres of land, it is my wish that those funds should be vested in land for the estate. At' the time the youngest child arrives at the age of twenty-one years, all the servants and all the other proceeds of my estate, after fully compensating my three executors for all their trouble, I wish to be equally divided among all my grandchildren.”
It appears that Mrs. Vanmeter, the wife of Isaac Vanmeter, was the daughter and only child of the testator, and that her children, twelve in number, are the grand-children mentioned *268 in the will as devisees. Four of these grand-children died in the lifetime of their father — one of whom, Jacob Vanmeter, being of full age, disposed of a portion of his estate by will. The other three were infants, and died intestate and without issue.
Afterwards, in September, 1854, Isaac Vanmeter died, leaving a will, the several provisions of which will be fully noticed hereafter.
This action was brought by the appellants, (Mrs. Allan being the daughter of Vanmeter,) who claim that her deceased brothers and sisters, under the will of their grandfather, Cunningham, took vested interests in his estate; that those interests, except that of Jacob, passed by descent to their father, Isaac Vanmeter; that the various residuary clauses contained in the will of the latter do not embrace those interests, but that they passed by descent to his heirs-at-law, and that under the provisions of the Revised Statutes (p. 282) she is entitled to be made “ proportionately equal” with her co-heirs and distributees in the distribution of this undevised estate.
The appellees, in their answer, concur in claiming that by the will of their grandfather, the deceased devisees took vested interests, which passed by descent to their father; but they insist that those interests are embraced by the residuary clauses of his will, and that the appellants are therefore entitled to no part of them.
The court below was of opinion that the testator, Cunningham, did not intend that his minor grand-children should take any present interest in any part of his estate; that the devises to them were contingent, and were to take effect only in the event that they should live to the age of twenty-one years; and it was therefore decided that, upon the death of the three infant devisees, their several interests did not vest in their father, Vanmeter, but fell into the residuum of Cunningham’s estate.
To reverse that judgment this appeal is prosecuted; the appellees uniting with the appellants in insisting that the construction of the will of Cunningham, on which the judgment was founded, is erroneous.
*269 We proceed at once to dispose of tbe question tbns presented.
In tbe interpretation of tbis will, the intention of the testator is, of course, the governing consideration, and that intention is to be ascertained by a reference to the general provisions of the instrument, as well as to the particular terms employed to express each separate devise or bequest — subject to the operation of those well settled principles and rules of construction which the courts have long recognized as applicable to similar cases.
It is perfectly clear that the testator intended to leave no portion of his large estate undisposed of by his will, and that it should be enjoyed by the twelve children of his only daughter upon terms of perfect equality. Two of those children, Solomon and Isaac, were adults at the date of the will, and for that reason he devised to them, absolutely and specifically, the four hundred and five acres of land in Fayette, and the slaves and personalty mentioned in the second clause of the will. The other devisees were all minors, and were, no doubt, considered by the testator incapable of managing profitably and prudently the estate given them, and for that reason he thought it best to postpone their right to the possession and control of it until each should have attained the prescribed age. No other conceivable motive could have existed for the distinction made in the devises to the two classes of devisees. They were equally the objects of his affection, and must be presumed, from all that appears in the will, to have been equally the objects of his intended bounty. A construction, then, which would result in a discrimination so unfavorable to the infant devisees, should not be adopted, unless rendered necessary by some more explicit indication of the testator’s intention than the words of the will afford. He must be supposed to have been, and doubtless was, aware of the difference between a vested estate and one which was contingent, as it respects the legal consequences and incidents attaching to each.
The arrival of the infant devisees at the age of twenty-one was certainly a future and uncertain event, and the expressions which refer to that event may be literally construed as import *270 ing a contingency; but the question is, whether the event was so regarded by the testator, and whether those expressions must therefore be interpreted to postpone the vesting of the estates until the happening of the contingency? It will be seen that there is no devise over, in case either of his grand-children should die before attaining the age of twenty-one. In the devises to them he does not use the words “ if,” or “ upon the condition,” or “in the event of,” &c. But he says, “I give to my grand-son Jacob, when he arrives at the age of twenty-one,” &c. So, in the fourth clause, all the balance of his land is to be rented out, and “ as the others of my grand-children become of the age of twenty-one years, each one shall draw from my estate two hundred acres;” and in the same clause, the executors are directed to lay off four hundred acres, being two shares. “ This,” he says, “ I give to the two youngest of my grandchildren when they become twenty-one years of age,” &c. Again, in the fifth clause : “ It is my will that each one of the younger children, as they become of age, shall draw from the estate horses, cattle, &c., of equal value to what I have given the boys of age;” and in the seventh clause, a final division of all his remaining estate, and of all the proceeds and profits, is directed to be made “ among all my grand-children.”
But without particularizing further, it is evident, from the whole face of the will, that the death of either of the devisees, before attaining the age of twenty-one, did not enter into the contemplation of the testator, and that he therefore made no provision for such event.
The decisive influence to which these circumstances are entitled, upon the question whether the vesting of the estate, or the mere possession and enjoyment, was intended to be postponed to a future period, has been determined by this court in numerous cases. In Briscoe’s devisees vs. Wickliffe (6 Dana, 162) it is said, in reference to a devise to A, if or when he attains a certain age, that the law, in ascertaining the intention of the testator, may regard him as only looking to the point of time when the event referred to must certainly happen, if at all, and not to the happening of the event, and that the devise might be construed as referring to a certain time which must come, *271 and being thus uncontingent, be effectual to convey an immediate vested interest. The same distinction is recognized in the subsequent cases of Danforth vs. Talbott's admr., (7 B. Mon., 628,) and Grisby vs. Breckinridge, &c., (12 B. Mon., 632.) In the former it is said that as the testator seemed “ not to have doubted but that his son would live until that period, and has made no provision for a different event, we should more probably violate his intention, and his own understanding of the language used, by regarding it as a contingency, than by considering it, as he probably did, as fixed and certain.” In both those cases, under devises substantially the same as those contained in the will of Cunningham, it was held that the devisees took vested, and not contingent estates. And inasmuch as those cases present a statement and review of the authorities, ancient and modern, which establish this principle of construction, a citation of them is deemed unnecessary here.
One of the grounds upon which the conclusion of the circuit judge seems to have been founded is, that no prior interest in the estate devised to the infant grand-children was vested or created by the will. It seems to us that this view is the result of a misapprehension of the effect which must be given to the fourth clause before quoted, in which the testator directs that the balance of his land shall be put in grass, and rented out for the benefit of the estate. By a subsequent clause, the accumulations from this and all other sources are to be equally divided among all the devisees. A prior interest is thus, in express terms, carved out for the benefit of the ulterior devisees, and extending over the whole period for which the possession and enjoyment are postponed. It is therefore, in effect, a devise of the whole estate, iustanter, to the devisees, with the exception of the partial interest carved out for their benefit. (Jarman on Wills, 629.) And in Grisby vs. Breckinridge, supra, it is said “ that where a devise is made in words that are apparently creative of a future estate, and that even import a contingency, such words, if a prior interest has been carved out of the estate, will be construed as referring merely to the futurity of possession occasioned by the carving out of a prior interest, and as pointing out the determination of that interest, and not as designed to protract the vesting.”.
*272 So in the case of Danforth vs. Talbott's adm'r, supra, the intermediate profits were devised to the wife, the daughter, and the principal devisee himself; and this is referred to as a “decisive circumstance,” bearing upon the question we have been considering.
Upon this branch of the case our conclusion, therefore, is, that each of the three deceased grand-children took vested interests in the estate of Cunningham by the devises contained in his will, and that, as a legal consequence, those interests, upon the death of the several devisees, passed by descent to their father, Isaac Vanmeter, as heir-at-law.
2. It becomes necessary, therefore, to determine, in the next place, whether the estates thus acquired by Vanmeter were disposed of by his will, or whether he died intestate as to them.
As already stated, Vanmeter died in September, 1854, leaving a will dated in August of the same year, the provisions of which, so far as they relate to the present question, are substantially these: He gives to his wife, for life, the tract of land containing the dwelling-house and all the improvements, to be laid off to her by a minutely defined boundary; also numerous slaves and personalty. He devises specifically to each of his children one hundred and fifty acres of land, in fee-simple, to be laid off to each out of designated parcels, except as to the 150 acres given to his son Thomas; that is to be laid off at the discretion of his executors. He than directs as follows: “ The whole balance of my land, not herein already devised, I wish to be managed by my executors for the benefit of nay estate, until my youngest child arrives at age, at which time my son, Isaac Vanmeter, is to have twenty acres of it more than either of my other sons, and the ivhole balance is then to be equally divided among all my sons; the twenty acres I give to Isaac to make up the value of the one hundred and fifty acres devised to him equal to that devised to the other children, as I consider his 150 acres to be of less value than that which the others get. In dividing said balance, the children are to have, as far as practicable, their interest therein laid off to them adjoining to that herein devised to them.” Pie next bequeathes *273 to eacb of his sons, as they become of age, the same number of slaves that he had already given his elder sons, and adds: “ After the youngest child gets his part, the balance, with the hires that may arise in the meantime, is to be equally divided among all my sons.” And finally, after giving certain cattle to all his children, and a particular cow and calf to his daughter, he says : “ The whole balance of my estate is to be sold by my executors and divided among all my sons, after my debts are paid and the legacy to my wife.”
The estate which Yanmeter acquired by descent from his three children, and wlpch forms the subject of this controversy, consisted of over six hundred acres of land, besides numerous slaves and personalty. He had obtained the actual possession of none of .this estate in his lifetime.
On the part of the appellants it is insisted, first, that it is apparent, upon the face of the will itself, that this estate is not embraced by any of its provisions; and, secondly, that it is shown by the proof tendered by them that the testator was ignorant of his right or title to the interests which his deceased children had acquired under the will of Cunningham, and that therefore those interests were not intended, and should not be held, to pass under his will.
1. In the investigation of this case we have not encountered the difficulties arising from the awkwardness and want of skill on the part of the draftsman, which so frequently attend the construction of wills. The language of this will is clear, explicit, and unambiguous, and the various dispositions are expressed with the utmost precision. We refer to this in the outset, as a circumstance of some significance in its bearing upon the question before us.
That the testator intended to dispose, by will, of the whole of his property, of every description, cannot be doubted. He first devises specifically a portion of his lands, and then “ the whole balance of my (his) land” is given to his sons. Next he disposes of some of his slaves, the balance, and their hires, to go to his sons. And finally, after some bequests of the personalty, he directs a sale of the whole balance of his estate, the proceeds, after payment of debts, to be divided among his sons. These *274 clauses are certainly comprehensive enough to repel any rational inference that the testator intended to die intestate as to any portion of his lands, or slaves, or personal estate. And besides, it is shown by the record that nearly one half of the property in the possession of the testator passed by these residuary clauses — the two-fold inference from which is, that he well understood their legal effect and operation, and that they were intended to comprehend every species of property owned by him.
We have deemed it scarcely necessary to offer an argument, of to cite authority for the purpose of showing that the interests owned by Vanmeter in the Cunningham estate were such as would pass under a general devise of all the testator’s lands. “It has been established from the earliest period, that a reversion in fee, however remote, and though clearly not in the contemplation of the testator, passes by general words in a will, even though there are other lands to satisfy the words of the devise.” (1 Jarman, 599, note 1, and authorities there cited.) It cannot be doubted, therefore, that the interests in question are embraced by the general clauses referred to, unless there be other provisions of the will which can be construed as modifying their plain import, and as restraining their legal effect.
It is contended by the appellants that, in describing the boundary of the land devised to his wife, the testator uses this language : “ Beginning in the line between the tract of land owned by Isaac Cunningham in his lifetime, and the land owned by me, and running thence,” &c., “till it strikes the aforesaid division line between my land and the land belonging to the estate of Isaac Cunningham, deceased; thence with said division line to the beginning” — which, they say, is to be construed as a recognition by Vanmeter of the division line between his lands and those of the Cunningham estate; that none of the specific devises apply to any land across that line, and that the residuary devise of the whole balance of his land must be confined to the same restricted application.
Now it must be remembered that the object of the testator, in this clause of the will, was only to describe and identify the tract intended for his wife, and not, as argued, to designate his *275 own title or to define the boundaries of his own entire estate. Regarded then as mere matter of description, for the purpose indicated, the language is strictly accurate and appropriate, even upon the assumption that he was aware of his title to the undivided interests in the Cunningham estate, and expresses what the testator obviously intended to express— the mere designation of a well known and long established division line between the lands owned by himself and those belonging to the Cunningham estate. In our judgment, these expressions are not entitled to the least influence in determining the effect or application of the residuary clauses.
But the appellants have presented an elaborate and ingenious argument, illustrated by numerous maps and diagrams, by which they undertake to demonstrate mathematically, from the situation and quantity of the several tracts of land in the actual possession of the testator, and from the mode in which he located certain specific devises out of those tracts, leaving a residue which, upon the final division, may be so partitioned among the devisees as to suit the allotments already made by his own will and by that of his father-in-law, that the words “ the whole balance of my land,” must have been intended to relate exclusively to this balance of the known lands thus partially disposed of by the prior specific devises, and cannot, therefore, be construed as including the lands in contest.
This view of the case may be briefly disposed of. In the first place, the testator did not locate all even of the specific devises of 150 acres each. The share given to Thomas is to be located at the discretion of the executors, who are also directed to lay off, out of designated tracts, several of the other shares. And, “ in dividing said balance, the children are to have, as far as practicable, their interest therein laid off to them adjoining to that herein devised to them.” So that the face of the will altogether fails to support the theory insisted upon by the appellants — that the testator had in his mind a fixed and determinate scheme of division, which his representatives were merely directed to execute in a designated mode. It seems to us, on the contrary, that quite a large discretion was confided to the executors in the location of both the specific and residuary *276 devises. Nor does it by any means follow, that because & portion of the balance of the testator’s lands is susceptible of a convenient and advantageous division among the sons, therefore another portion of such balance must be held exempt from the operation of a plain provision requiring a division of dll the testator’s lands, upon the mere ground of inconvenience. It is a well settled principle that the obvious construction of a will can never be controlled by the inconvenient, or even unmerito-rious, nature of the devise.
Without pursuing this branch of the inquiry further, we are satisfied that there is nothing upon the face of the will which authorizes the assumption that the testator used the words, “ the whole balance of my land,” in any other than their ordinary and primary sense, and that the construction which would restrict the application of those words to a part only of the lands then owned by the testator, so far as such construction is made to rest on the context, is inadmissible.
2. The remaining point involves the effect and competency of the parol testimony which has been introduced for the purpose of proving that the testator did not know that he owned the estate in controversy, and that he did not, therefore, intend to dispose of it by his will.
It is now well settled that evidence of extrinsic facts is admissible in aid of the exposition of walls, although they are by our statute required to be in writing, and are, for that reason, peculiarly within the general principle which excludes parol evidence which tends to contradict, add to, or explain the contents of written instruments. But this extrinsic evidence must always be such as, in its nature and effect, simply explains what the testator has written, and not what he intended to have written. In other words, the question in expounding a will is not what the testator actually intended, as contradis-tinguished from what his words express, but what is the meaning of the words he has used? (Gwillim vs. Gwillim, 5 B. & Adol., 129.)
Keeping in view this important distinction, which has been expressly recognized by this court, (Wheeler’s heirs vs. Dunlap, 13 B. Mon., 292,) there is but little difficulty in applying the rules *277 of law regulating the admission of extrinsic evidence in cases of this sort. Those rules are laid down with great precision by Wigram in a work devoted exclusively to an examination of this perplexing subject, and to which repeated reference has been made by counsel on both sides.
Such of those rules as relate to the point under consideration are found in the first, second, and fifth “propositions of Wigram,” and are as follows :
1. “A testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless from the context of the will it appears that he has used them in a different sense, in which case the sense in which he thus appears to have used them will be the sense in which they are to be construed.”
2. “Where there is nothing in the context of a will from which it is apparent that a testator has used the words in which hé has expressed himself in any other than their strict and primary sense, and where his words so interpreted are sensible with reference to extrinsic circumstances, it is an inflexible rule of construction that the words of the will shall be interpreted in their strict and primary sense, and in no other, although they may be capable of some popular or secondary interpretation, and although the most conclusive evidence of intention to use them in such popular or secondary sense be tendered.”
5. “For the purpose of determining the object of the testator’s bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will.”
Now, it has been already shown that there is nothing in the context of Vanmeter’s will from which it can be inferred that he used the words in which he expressed himself in any other than their strict and primary sense. The question then arises, *278 are tbe words so interpreted sensible with reference to the persons and things described in the will ? They certainly are. The objects of the testator’s bounty, as designated in the residuary clauses, are his sons; the subjects of disposition are the whole balance of his land, and the whole balance of his estate. The language is perfectly free from ambiguity, and perfectly sensible in its application to the “ extrinsic circumstances.” The inflexible rule of construction, therefore, demands that it should be interpreted in its strict and primary import, and in no other, although the most conclusive evidence of an intention to use it in a different sense may be tendered.
There is nothing in the rule laid down in the 5th proposition, when understood as limited by the two former, and as expounded and illustrated by the author, which conflicts with these principles. The whole effect of the rule is, that where the facts of the case are such as to exclude the primary meaning of the words, or where the object of the testator’s bounty, or the subject of disposition, is described in terms which are applicable indifferently to more than one person or thing — in both these classes of cases parol evidence of material extrinsic facts is admissible to enable the court to determine whether the intention of the testator is certain in any .other sense of which the words, with reference to the facts, are capable; or to enable the court to identify the person or thing referred to in the will. For illustration': the word child, strictly speaking, means a legitimate offspring, yet it has been applied to an illegitimate offspring, where the circumstances of the case made it impossible that the testator (who must have had some meaning) used the word in such strict and primary sense. ( Wilkinson vs. Adam, 1 Ves. & B., 422.) And where a man devises his manor of S., and it is made to appear that he has two manors of that name, parol evidence is admissible to enable the court to determine which of them he intended to give.
But the case before us involves no question of primary and secondary meaning of terms, nor of patent or latent ambiguity. It is the case of a clear and plain gift of all the balance of the testator’s lands, and of all the balance of his estate, to his sons. *279 The property in contest constituted a part of the lands and estate then owned by the testator, and is necessarily embraced by the words of the devises, in their natural, legal, and ordinary signi.fication. And, as was said by this court in Mitchell vs. Walker, (17 B. Mon., 66,) “we know of no case in which it has been held that where the words used in describing the subject of the gift comprehended several objects, such (parol) evidence is admissible to exclude from the description one or more of them, on the ground that they, or some of them, were not actually intended to be included. In such case, the intention is to be sought for in the words of the will; and although parol testimony may sometimes be resorted to for ascertaining the intended sense of the words, it cannot be resorted to for the purpose of ascertaining and giving effect to a secret intention inconsistent with the words themselves, or restrictive of their natural and legal import.”
This is the true principle deducible from all the authorities on this subject, and is conclusive of the question under consideration. The effect of the proof offered in this case is, not to explain the sense of ambiguous words, or to apply them to doubtful or uncertain objects or subjects, but to establish a . secret intention, independent of, and inconsistent with, the words themselves.
It results from what has been said that the fact so confident!}1' relied on in the argument, that the testator did not know he owned the estate in controversy, would not, of itself, restrict the operation of the words of the will, or prevent the estate from passing under it. The point has been expressly and repeatedly decided by this court. In the case of Darnall, &c., vs. Adams, (13 B. Mon., 273,) it was proved that the testator believed his interest in certain slaves ceased with his own life, and of which he therefore supposed he had no power to make any disposition by will; yet it was decided that the property being his,-and a part of his estate, passed by the broad terms of the residuary devise.
And in Wheeler’s heirs vs. Dunlap, supra, the court refused to consider the parol evidence introduced to show that the testatrix only claimed and did not suppose that she had a right to *280 any more than a life estate in the land, upon the ground that the fact offered to be proved afforded no aid in ascertaining the meaning of the language used, inasmuch as that meaning had to be arrived at from indications furnished by the will itself.
In the more recent case of Mitchell vs. Walker, supra, the same doctrine is expressly recognized, and the adjudged cases relied upon by the appellants as favoring the principle they contend for, are elaborately reviewed. The case, especially, of Doe on demise of Vessey vs. Wilkinson, &c., (2 Term R., 197,) is critically examined, and the remark of one of the judges to the effect that if the testatrix “ were not aware of her power,, she did not intend to give that which she was not aware she could give, and then the law gives it to the heir, and we cannot take it from him,” is characterized as, at most, but an obiter dictum, and not a judicial decision, even by one judge.
A reference to the English authorities upon this point is deemed unnecessary, as they tend to the same conclusion. Nor need we dwell upon the obvious consequences which would result from the principle contended for. The only purpose of a residuary clause is to pass all the estate not disposed of by the other provisions of the will; and to allow proof in such cases that the testator did not know, or had forgotten, that he owned certain property, and to decide upon such proof that this property did not pass by the words of the devise in which it was clearly and plainly comprehended, would be to offer a premium to perjury, and to let in all the evils intended to be guarded against by the statute which requires that these final and solemn dispositions shall be made only in writing. The effect would be, also, in a majority of cases, to defeat the actual intention of the testator. In the very case before us, it is not denied that the testator intended an inequality in the disposition of his estate, as plainly appears upon the face of the will. Where is the foundation, in the will or in the record, for the presumption that if he had known the estate in contest belonged to him, the same motives and reasons would not have operated, and that he would have made no distinction between his sons and his daughter in respect to the value of the devises to each?
*281 Upon the authorities and principles referred to, we are of the opinion that, by the will of Vanmeter, all the interests he acquired in the estate of Isaac Cunningham by descent from his children, were included, and passed to his sons, and that the appellants are entitled to no part of those interests.
And the judgment of the court below, which denied to the appellants this relief, though upon a different ground, is therefore affirmed.