THOMAS E. HANIFIN *vs.* C & R CONSTRUCTION COMPANY.

Suffolk.    March 1, 1943. — April 26, 1943.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Sale,* Of timber, Conditional, Construction of contract of sale. *Contract,* Construction. *Fire. Negligence,* Trespasser, One owning or controlling real estate, Fire, Contributory, Proximate cause. *Proximate Cause. Practice, Civil,* Auditor: findings, conclusions from findings.

A conclusion by an auditor, whose findings of fact were to be final, not shown to have been based solely upon subsidiary facts found by him and not inconsistent therewith, that lumber of the plaintiff, when burned through negligence of the defendant while it was on land of the Commonwealth, was "outside the area covered by his [the plaintiff's] contract" with the Commonwealth, must be taken to have been based on evidence not reported to the effect that the "area" referred to in the finding was what was meant by the ambiguous words "said premises" in a provision of the contract that "all cut timber and hardwood" was "to be stacked upon such area as" might "be designated"

and was to be removed therefrom on or before a certain date, and that "all cut wood and lumber remaining on said premises" after that date should "be deemed abandoned and become the property of the Commonwealth."

One, having the right to cut and remove timber under a contract with the Commonwealth providing that cut timber should be stacked upon "such area" as might be "designated" by a commission representing the Commonwealth and that lumber remaining there after a specified date should "be deemed abandoned and become the property of the Commonwealth," had not lost his title to lumber after that date destroyed by fire while stacked on land of the Commonwealth where it appeared that the place where it was stacked was "outside the area covered by" the contract and that therefore the "forfeiture" clause was not applicable.

The owner of lumber stored on land of the Commonwealth and destroyed by fire through negligence of a contractor burning over other land of the Commonwealth under a contract with it would not be precluded from recovery from the contractor by the mere fact that the owner of the lumber was a trespasser as to the Commonwealth on the place where the lumber was stored, where it appeared that the defendant's contract gave him no rights or duties in that place.

A conclusion by an auditor, whose findings of fact were to be final, following findings of subsidiary facts, that "in these circumstances" the plaintiff was contributorily negligent, must be taken to have been based solely on the subsidiary findings in his report and was open to review by the trial court and by this court.

Even if a plaintiff, seeking recovery for lumber burned through negligence of the defendant, carelessly created a fire hazard in that he did not remove combustible materials from the ground around his lumber although he knew that the defendant was burning over a nearby area and that "in the event that sparks or hot coals were blown" into the place where the plaintiff's lumber was stored "there would be more likelihood of his lumber being destroyed by fire than there would have been if said fire hazard did not exist," a conclusion was not proper that negligence of the plaintiff contributed to his loss where it appeared that the fire which destroyed his lumber did not result from sparks or hot coals so blown, but burned along the ground between the area where it had been started by the defendant and the plaintiff's lumber and was of such a nature and intensity that it was just as likely that the plaintiff's lumber in its path would have been destroyed even if he had removed the combustible materials around his lumber.

TORT. Writ in the Superior Court dated August 18, 1939.

The case was heard by *Collins*, J., upon the report of an auditor, whose findings of fact were to be final and who reported a conclusion that the plaintiff was contributorily negligent but that, if "as a matter of law, the plaintiff is

entitled to recover . . . he is entitled to recover the sum of $11,365.36," with interest to the date of the report, $1,591.14, a total of $12,956.50.

The judge allowed a "motion of the plaintiff for judgment on the report of the auditor" and "found" for the plaintiff "on the report of the auditor" in the sum of $13,151.58, with interest thereon from the date of filing of the report. He then reported the case to this court for determination under G. L. (Ter. Ed.) c. 231, § 111.

*G. A. McLaughlin,* (*E. A. Counihan, Jr.,* with him,) for the defendant.

*E. B. Hanify,* (*R. D. Price & J. J. Phelan, Jr.,* with him,) for the plaintiff.

Cox, J.    The plaintiff's declaration is in two counts, in each of which it is alleged (a) that on June 7, 1939, his lumber was destroyed by a fire which was carelessly and negligently set by the defendant, its agents or servants, and which spread to the lumber, or (b) that the defendant carelessly or negligently failed to control the fire and permitted it to spread to and destroy the lumber. The case was referred to an auditor, whose findings of fact were to be final.

In September, 1937, the Commonwealth, acting through its metropolitan district water supply commission, hereinafter referred to as the commission, gave the plaintiff several bills of sale, so called, of wood and timber standing on portions of the area comprised in the construction of the Quabbin reservoir. In two of these bills of sale, dated September 16, 1937, the wood and timber were generally described as standing on certain designated acres of land owned by the Commonwealth and shown on plans of the commission. Each of these bills of sale gave the plaintiff the right to enter upon the land and to erect and maintain portable sawmills at such locations as might be agreed upon between the plaintiff and the commission, "and to cut and remove from said area standing wood and timber on or before July 15, 1938," and provided that "any and all cut wood and timber remaining on said area after that date (July 15, 1938) shall be deemed abandoned and become the property of the Commonwealth," and that "all cut timber

and hardwood is to be stacked upon such area as may be designated by the Commission and where it will not interfere with any operation of the Commission, and to be removed therefrom on or before December 1, 1938 and any and all cut wood and lumber remaining on said premises after that date (December 1, 1938) shall be deemed abandoned and become the property of the Commonwealth."

The plaintiff received another bill of sale, so called, from the commission on May 12, 1938, of "Only such standing wood and timber on land owned by the Commonwealth . . . and being that portion below said flow line as shown on plans of the . . . Commission." This bill of sale gave the plaintiff the right to enter and maintain sawmills as in the previous instruments, but he was given until July 31, 1938, to cut and remove "from said area" the "standing wood and timber." It also contained provisions for stacking "all cut timber and hardwood" at some designated place and for forfeitures similar to those in the previous bills of sale except that the forfeiture dates were respectively July 31, 1938, and April 1, 1939. The plaintiff purchased additional standing timber from the Commonwealth and was given similar bills of sales therefor, none of which was introduced in evidence.

The defendant, on or about October 25, 1938, entered into a written contract with the Commonwealth through the commission, by the terms of which, among other things, the defendant was required to clear all the land below the "flow line," which was the line above which the water in the Quabbin reservoir, when completed, would not rise. The defendant was required to take full responsibility for the safety and quality of the work to be done and for the sufficiency of the methods to be employed in its prosecution. It was required to take all necessary precautions to prevent the starting or spreading of fires on areas outside the limits of the clearing to be done under the contract, and in "burning materials for . . . [its] clearing operations," it was required to comply with the regulations of the fire wardens or other officers having authority in such matters. All burning, unless otherwise permitted, was required to be

done "within the limits of this contract" and not less than one hundred feet, measured horizontally, from any trees that were to be left standing, and no burning was to be done on any areas when, in the opinion of the engineer, wind and climatic conditions were such that areas outside the clearing line would be endangered by fire, "whether or not the Contractor . . . [held] a permit to burn from a forest warden, fire warden or any other person or persons authorized to issue permits for open fires." (See G. L. [Ter. Ed.] c. 48, § 13, as amended.) The defendant was required to give its personal attention constantly to the faithful prosecution of the work, to keep the same under its personal control, and not to assign or sublet the work, or any part thereof, without the previous written consent of the commission.

The plaintiff completed the cutting of the standing timber on the areas specified in the first two bills of sale on or before July 15, 1938, the date therein provided, and completed the cutting of the standing timber in the area specified in the third bill of sale on or before July 31, 1938, the date therein specified. Some time in December, 1937, the plaintiff requested from a forester "on the job" representing the commission, permission to store his cut lumber until December 1, 1939, in an area named by him and owned by the Commonwealth, located about forty feet east of the easterly line of the public highway, at a point about one hundred feet above the "flow line" of the reservoir, which was being constructed on the westerly side of said highway and from one eighth to one fourth of a mile distant therefrom. Thereafter, the forester reported to the plaintiff that the commission had granted the permission, as requested. At some time after the hurricane of September 21, 1938, two of the three members who comprised the commission, while on a tour of inspection at the site of the reservoir, orally granted the plaintiff permission merely to store his cut lumber "in said area" until December 1, 1939, at his own risk. The third member of the commission did not join, and never joined, in granting said oral permission, and there is no record of any vote in the records of the

commission granting any such permission. "The area in which the plaintiff was granted said oral permission to store his said lumber was outside the area where he cut said lumber and outside the area covered by his contract and said contract made by and between the defendant and said Commission acting for said Commonwealth." The plaintiff stored his cut lumber in the area "named by him," and from time to time thereafter, without the permission of the commission, made sales and deliveries from said area in the regular course of his business, and, in general, used said area in all respects as if it were his privately owned lumber yard.

The defendant's contract required it to burn or otherwise dispose of all the branches, tops of trees and other rubbish left from the lumbering operations carried on by the plaintiff and others. The actual burning was done for the defendant by a corporation under a subcontract with the defendant. This subcontract was stated therein to have been made "subject to the assent by the . . . Commission," but it was never approved by the commission, and the defendant never disclosed to the commission that it had entered into this subcontract. The subcontractor furnished the equipment that was used and hired and furnished the men engaged in the burning. The defendant carried these men on its own payroll and paid them for their services, deducting from time to time these payments from whatever, under the terms of the subcontract, became due to the subcontractor. The work of clearing the area by burning was dangerous for the reason that the area was covered with "slash" and other débris resulting in part from the hurricane and in part from the lumber operations. This condition created a fire hazard, as the defendant well knew, but neither it nor the corporation did anything to eliminate it. The burning was also dangerous because of unusual and peculiar winds which "obtained" in the valley where the reservoir was located, as the defendant well knew.

The defendant, on each day when an area was to be burned, would apply to the commission's engineer for permission, and, under instructions from the defendant, the

subcontractor would burn only in the area for which permission was granted.  To this extent the defendant controlled the actions and conduct of the subcontractor, but it exercised no supervision over its acts in the actual burning. Neither the defendant nor the subcontractor ever obtained the permission of the local fire warden to carry on any burning.  The subcontractor started and supervised several hundred burnings, and not less than three of these escaped its control because of the lack of sufficient fire fighting apparatus.

On June 7, 1939, the subcontractor started a fire.  In the early afternoon a separate fire, in no way connected with the first fire, was observed about one quarter or one half mile away, which was caused by the wind fanning into flames the coals of prior burnings in that locality.  The subcontractor fought this second fire, and in so doing, carelessly placed one of its lines of fire hose so as to cause it to be destroyed by the fire.  Two or three hours later, when a representative of the subcontractor was of opinion that this fire was under control, he allowed most of the men who had been fighting it to leave the scene, keeping only a skeleton force at the location to finish the work of extinguishing the fire and to watch it. Shortly thereafter, the fire flared up, and, because of the high wind from the west, the lack of sufficient men to fight the fire, the lack of sufficient fire hose, and the hazardous condition created by the "slash" and débris, this fire increased in intensity, escaped the control of the men, jumped a railroad line, burned to the public highway already referred to, crossed it, and burned across a narrow strip of land from the highway to the plaintiff's lumber, which was completely destroyed.  Other facts found by the auditor will be referred to hereinafter.

The auditor found that the plaintiff's negligence contributed to the destruction and loss of his lumber, but found the amount for which the plaintiff was entitled to recover, if, as matter of law, he was so entitled.  A motion of the defendant to confirm the auditor's report was allowed.  See *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 112.  The trial judge allowed the plaintiff's motion for judgment, stating that in his opinion,

the subsidiary facts found by the auditor and the inferences therefrom, viewed in the light most favorable to the defendant, did not warrant, in law, his ultimate finding of contributory negligence on the part of the plaintiff. He found for the plaintiff and reported the case to this court. G. L. (Ter. Ed.) c. 231, § 111.

It is the general rule in this Commonwealth that a contract for the sale of standing wood or timber to be cut is construed as passing an interest in the trees when they are severed from the land, *Fletcher* v. *Livingston*, 153 Mass. 388, 390, and cases cited, and where, as here, the contract provides a time within which the cut wood and timber shall be removed, the title to it is conditional on the removal within the time stated, with a reverter of title to the grantor in case it is not so removed, *Kemble* v. *Dresser*, 1 Met. 271, 272; *Smith* v. *Wells*, 250 Mass. 151, 155, and it is not necessary in such a case that the former owner take any action to enforce the forfeiture or reverter. *Kemble* v. *Dresser*, 1 Met. 271, 272. *Perkins* v. *Stockwell*, 131 Mass. 529, 531–532. *Smith* v. *Wells*, 250 Mass. 151, 155, and cases cited. The clauses in the instruments of sale providing for a reversion of title to the Commonwealth, however, would not operate to divest the title of the plaintiff, if, on or before the specified dates, the timber was cut and removed from the areas designated therein. *Lawrence* v. *Gifford*, 17 Pick. 366, 367–368. *Kirkle* v. *Allison*, 126 Va. 701, 704, 705.

The auditor found that the area where the plaintiff stored his lumber was "outside the area where he cut said lumber and outside the area covered by his contract and said contract made by and between the defendant and said Commission . . . ." The evidence is not reported, and this finding of the auditor is not stated to have been based upon his subsidiary findings, nor does it appear from an examination of the report, that it is so based. *Lewis* v. *Conrad & Co. Inc.* 311 Mass. 541, 543–545. This general finding is not inconsistent with any of the subsidiary findings reported. *Lakeville* v. *Cambridge*, 307 Mass. 433, 437. The so called bills of sale contain two separate clauses for a reverter of title to cut wood and timber remaining on "said area" after

July 15 or July 31, 1938.   It is assumed that the words "said area" refer to the areas where the timber was standing.   The auditor found that the timber had been removed from that area.   The bills of sale provide further where the cut timber is to be stored, and for a reverter of title of wood or timber remaining on "said premises" after the dates therein specified.   The words "said premises" are ambiguous, since they may refer either to the area where the timber originally stood or to an area outside.   In this connection, it is to be observed that the timber is to be "stacked" upon such area "where it will not interfere with any operation of the Commission."   It must be assumed that this ambiguity was resolved by the finding of the auditor that the area in which the plaintiff stored his lumber was "outside the area covered by his contract."   In the circumstances of the case, parol evidence was admissible, *Kennedy Bros. Inc.* v. *Bird,* 287 Mass. 477, 483; *Rizzo* v. *Cunningham,* 303 Mass. 16, 21, and cases cited, and, the evidence not being reported, a general finding, not based on subsidiary findings, imports a finding of subsidiary facts essential to that conclusion.   *Lewis* v. *Conrad & Co. Inc.* 311 Mass. 541, 543.   The fact that the lumber, when destroyed by the fire, was on premises owned by the Commonwealth, does not require the conclusion that the lumber was forfeited, in the absence of a finding that the parties intended that the forfeiture clause should apply to lumber stored on the Commonwealth's land.   We think it follows that the auditor's finding establishes that the forfeiture clause was not applicable to the plaintiff's lumber; and that the title to it was in the plaintiff.

It follows from this that it is unnecessary to consider whether the oral extension of time for the removal of the lumber was invalid, for the reason that there is no record of any vote granting such extension in the records of the commission.   If it be assumed, without deciding, that this extension of time was not binding and that the plaintiff was a trespasser as to the Commonwealth, this would not relieve the defendant from the duty of exercising reasonable care with respect to the burnings.   The defendant

contends that the only duty owed by it to the plaintiff was to refrain from injuring his property by wilful, wanton or reckless misconduct. It concedes that there was adequate evidence of its negligence. It contends that it was rightfully on the premises of the Commonwealth by authority of an express contract under which it was required to burn the débris on the areas covered by that contract, and invokes the application of the principle of law that, as a business invitee of the Commonwealth on its land, it was placed in the position of the owner with respect to its duty toward trespassers or mere licensees upon the land. See *Mikaelian* v. *Palaza*, 300 Mass. 354. The defendant's work, including the burning, was to be performed on the area below the "flow line" of the reservoir when completed and filled. The plaintiff's lumber was stored above and away from that "flow line," and outside the area covered by the contract between the defendant and the commission. In the circumstances, the rule for which the defendant contends is not applicable. For all that appears, it had been given no possession or control of that part of the Commonwealth's land where the plaintiff's lumber was stored when it was destroyed. Assuming that the plaintiff was a trespasser upon the land of the Commonwealth, he was not a trespasser upon any land of the Commonwealth where the defendant had any rights, and, to all intents and purposes, it is the same as if the plaintiff were a mere trespasser upon the land of a third person. *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, 345–346, and cases cited. *Mikaelian* v. *Palaza*, 300 Mass. 354. *Haskins* v. *Grybko*, 301 Mass. 322, and cases cited.

In view of the defendant's concession that there was adequate evidence of its negligence, it is unnecessary to determine whether the subcontractor that did the burning was the defendant's agent or an independent contractor. See *Herrick* v. *Springfield*, 288 Mass. 212, 216–217; *Ferguson* v. *Ashkenazy*, 307 Mass. 197, 201.

The auditor found that the proximate cause of the destruction of the plaintiff's lumber was the combination of the fire hazard which the defendant negligently allowed to

exist, its negligence in failing to supervise the actions of the subcontractor, and the negligence of the subcontractor. He then made subsidiary findings and concluded, "in these circumstances," that the plaintiff was contributorily negligent. See *Lewis* v. *Conrad & Co. Inc.* 311 Mass. 541, 544, 545; *Mahoney* v. *C & R Construction Co.* 311 Mass. 558. The trial judge, however, found that the inference from the subsidiary facts, as found, did not warrant, in law, the auditor's ultimate conclusion as to contributory negligence. The report of the auditor was, in effect, a case stated. The auditor's subsidiary findings relating to the matter of contributory negligence must stand, but his conclusion of fact, based solely upon the "circumstances" set out in those subsidiary findings, is open to review as matter of fact, not only by the trial court, but also in this court when the case comes here on "appeal, exceptions, report or other proceedings in the nature of an appeal." *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 108, 109, and cases cited. *Lewis* v. *Conrad & Co. Inc.* 311 Mass. 541, 543.

The subsidiary findings upon which the auditor based his ultimate conclusion that the plaintiff was contributorily negligent were, in substance, as follows: The plaintiff's lumber, as between him and the Commonwealth, was stored at his own risk. He knew that at all times the clearing of the reservoir site would be done by burning in various locations, that, in the valley where the reservoir was located, unusual and peculiar winds obtained at various times during the day, and that, because of these winds, there was a likelihood of fire escaping from those in charge of the burning. As a result of the hurricane of September 21, 1938, and on the day the lumber was burned, the spaces between the piles of lumber and the narrow strip of land between the highway and the lumber, were covered with slash, small branches of trees, and pine needles, in places not less than one foot deep, and, in addition, there was lumber débris which resulted from the loading and delivering of lumber by the plaintiff. He knew that this condition, especially in hot, dry weather (and on the day of the fire the weather was hot and dry)

created a fire hazard, "and that in the event that sparks or hot coals were blown from the burning branches, tree tops and lumber rubbish in the reservoir site proper onto or into the space where his said lumber was stored there would be more likelihood of his lumber being destroyed by fire than there would have been if said fire hazard did not exist, but . . . [he] did nothing whatever to eliminate said fire hazard."

We assume, for the purposes of the case, that the plaintiff could be found to have been negligent in not removing the combustible materials constituting the fire hazard in the area where the lumber was stored, if it could be found that he should have foreseen the likelihood of damage by a fire negligently set on or allowed to escape by the defendant from adjoining premises, upon the theory that the test of liability in negligence is the foreseeability of an event that takes place resulting in harm or damage. See *Ross* v. *Boston & Worcester Railroad,* 6 Allen, 87, 89; *Morse* v. *Homer's Inc.* 295 Mass. 606, 610; *Bellows* v. *Worcester Storage Co.* 297 Mass. 188, 195–196. Compare *LeRoy Fibre Co.* v. *Chicago, Milwaukee & St. Paul Railway,* 232 U. S. 340, 349–352; *Kellogg* v. *Chicago & Northwestern Railway,* 26 Wis. 223, 231–233. We are of opinion, however, that the proper inference to be drawn from the subsidiary facts is that the plaintiff was not negligent in a manner that contributed to his loss and that the presence of combustible material where the lumber was stored was a condition rather than a contributing cause of its destruction.

A foreseeable risk becomes important only when the happening of the event arising from it results in damage. It may be assumed that everyone knows that a fire that is set may get out of control, and it probably does not require much demonstration to establish the fact that a fire will run over ground covered with pine needles, slash, and other débris. The precise findings of the auditor are, that the plaintiff knew of the existence of a fire hazard and that "in the event that sparks or hot coals were blown from the burning branches, tree tops and lumber rubbish in the reservoir site proper onto or into the space where his said

lumber was stored there would be more likelihood of his lumber being destroyed by fire than there would have been if said fire hazard did not exist . . . ." In making these somewhat restrictive but nevertheless significant findings, it would seem that the auditor took into account other findings as to the nature of the work that was being done, the methods employed, the requirements as to obtaining permits and the facilities for protection that were at hand. Other findings, however, already referred to, as to the cause of the fire disclosing, among other things, the failure of the subcontractor to safeguard the fire, and its negligence in carelessly placing one of the lines of hose so that it was destroyed by the fire, can hardly be said to support the conclusion that was reached by the auditor that the plaintiff was contributorily negligent. The fire which destroyed the plaintiff's lumber did not result from sparks or embers being blown onto the area where the lumber was stored. See *Fielding* v. *S. Z. Poli Realty Co.* 274 Mass. 20, 22, 23; *Falardeau* v. *Malden & Melrose Gas Light Co.* 275 Mass. 196, 199; *Bellows* v. *Worcester Storage Co.* 297 Mass. 188, 195–197.

Probably, however, inasmuch as the burden of proving that the plaintiff was contributorily negligent rested upon the defendant, a more satisfactory reason for disposing of this branch of the case is that we are of opinion that the subsidiary findings of the auditor do not support a finding to that effect for the reason that a fire is disclosed that was of such a nature and intensity that it is just as likely that the plaintiff's lumber, which was in its path, would have been destroyed even if the plaintiff had not been negligent. See *Wall* v. *King*, 280 Mass. 577; *Renaud* v. *New England Transportation Co.* 286 Mass. 39, 44, and cases cited; *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592, 596–597, and cases cited; *Bennett* v. *Cohen*, 310 Mass. 714, 715, and cases cited; *Ruffin* v. *Coca Cola Bottling Co.* 311 Mass. 514.

It follows that the plaintiff's motion for judgment on the auditor's report was allowed rightly, and that judgment is to be entered for the plaintiff on the finding.

*So ordered.*