Gerson vs. Slemons.

## GERSON VS. SLEMONS.

1. CONTRACT: *A stranger not liable for the failure of.*
Where two persons contract with reference to an event that is contingent upon the act of a stranger, the latter cannot be held liable for damages resulting from a failure of the contract, though it may have grown out of his omission to perform the act upon which the contingency depended.

2. DAMAGES: *When too remote.*
A creditor who procures the debtor's agent to pay him the money of his principal by promising to apply a part of it to certain indebtedness and to accept the draft of the debtor for the residue, and afterward refuses to accept the draft, but applies the money to other indebtedness of the principal, is not liable to the agent for loss of commissions and a debt which he would have secured by the performance of the promise to accept the draft. Such damage is too remote and speculative.

3. SET OFF:
Unliquidated damages is not the subject of set off.

4. CONTRACT: *Consideration.*
A promise will not be implied from the performance of that which the party was under a legal obligation to do, even though it may have been at the request of the party benefited.

APPEAL from the *Drew* Circuit Court.
Hon. JOHN W. WILLIAMS, Circuit Judge.
*Dodge & Johnson*, for Appellant.
*Garland*, contra.

HARRISON, J. :
Ben. Gerson sued William F. Slemons before a Justice of the Peace on the following due bill:

"MEMPHIS, TENN., *March 13th, 1872*.

"Due Ben. Gerson one hundred dollars, for money advanced
W. F. SLEMONS."

Slemons filed the following set off:

" *Ben. Gerson to W. F. Slemons,*                    *Dr.*
1872, March 1.
For amount of loss of discount on C. L.
   Burk's draft.................................$  45  00
Protest fees on same..............................  25  00
Amount of loss on A. T. Hurley's draft.......  60  00
Protest fees on same..............................  20  00
Amount of loss on J. A. Jackson's draft......  40  00
For amount paid Mrs. Belser....................  75  00
Expenses to Memphis.............................  75  00
And damages sustained by his failure to carry
   out contract........ ............................. 150  00
                                                  ———— $490  00

There was a trial by a jury, which returned a verdict in favor
of Slemons for $390.

Gerson appealed to the Circuit Court, and upon the trial there
the verdict was again in favor of Slemons and for the same
amount. Gerson moved for a new trial, and, failing to get it,
appealed to this Court.

The grounds of the motion for a new trial were, the refusal of
the Court to give certain instructions asked by him, and that the
verdict was against both law and evidence.

The controversy was only in relation to the defendant's set off;
and the evidence was somewhat conflicting, but it will not be
necessary, to a right understanding of the case, to state but little
more than the evidence for the defendant, which was that of the
defendant himself.

He testified that he and his partner, Atkinson, were in the
winter of 1871 and 1872, indebted to the plaintiff, who, it
otherwise appears, was a commission merchant in New Orleans,
in the sum of $3,300 or thereabout, and that during that winter

George Gerson, the agent of the plaintiff, visited Monticello, and it was there arranged and agreed between him, as the plaintiff's agent, and the defendant and Atkinson, that Atkinson should place in plaintiff's hands certain notes he held on Mrs. Belser, in the aggregate $4,500, as collateral security for their debt, and when the notes should be paid, he should, after satisfying the debt, accept drafts for Atkinson for the remainder and to the further amount of $1,100, and, in accordance with that agreement, Atkinson delivered the notes to him.

Atkinson afterwards moved to Red River and wrote to defendant to look after his business, and authorized him to draw in his (Atkinson's) name the draft plaintiff had agreed to accept for him, and directed him to use the same in settlement of the debts which he (Atkinson) was owing C. L. Burk, A. T. Hurley, J. A. Jackson and others, and promised, if the parties would deduct ten per cent. from their demands, he would pay him that for his trouble. He also authorized him to receive the money from Mrs. Belser. That Mrs. Belser, having met with the misfortune of having her house burnt, was disinclined and hesitated to pay the notes, but, upon witness making a deduction of $75 from the amount, she gave him a check on Memphis for the balance.

At plaintiff's request he went to Memphis to meet him for a settlement, but met George Gerson. He dispatched to plaintiff at New Orleans to know if he would accept Atkinson's draft to the amount that had been promised through his agent, and he replied that he would. He then paid to George Gerson the money which he had drawn on Mrs. Belser's check, less $100, he reserved to pay traveling expenses, and for that handed him the due bill sued on.

C. L. Burks, consenting to deduct ten per cent. from his account against Atkinson, and also the protest fees and damages on a draft that Atkinson had before given him in discharge of

the same account, which had been protested and returned, he drew a draft in Atkinson's name in his favor on the plaintiff for the sum so agreed on.   He made similar settlements with A. T. Hurley, who also held a protested draft, and with J. A. Jackson. The plaintiff refused to accept or pay any of these drafts, and they were protested.

The first and second charges in the set off, he said, are for the deduction of ten per cent. which C. L. Burks made from Atkinson's account, and the protest fees and damages in his former draft, relinquished by him.

The third and fourth for the similar deduction and relinquishment by A. T. Hurley, and the fifth for the like deduction made by J. A. Jackson, and that the sixth is for the deduction allowed on Mrs. Belser's note.

He testified further that Atkinson was owing him $4,900, and when he authorized him to get the money from Mrs. Belser he left it optional with him to apply it towards the satisfaction of that debt, or to pay it over to the plaintiff; and if plaintiff had not deceived him by his promise to accept Atkinson's draft, he would not have paid it to him, but would have applied it to the other debts of Atkinson, and after the payment of them would have had about $1,100, to apply to his own, and that by plaintiff's failure to accept Atkinson's draft, according to agreement, he, defendant, was damaged two or three thousand dollars, but to bring the damages within the jurisdiction of the justice he had stated them in the set off at $150.

From the plaintiff's evidence, which in that particular, was not contradicted, it appears that Atkinson had with the plaintiff also an individual account, and that the balance of the Mrs. Belser notes after paying Slemons & Atkinson's indebtedness was applied to it, but was not sufficient to discharge it.

From the view we take of the evidence we do not deem it worth while to notice the instructions that were refused, except as to the charge for the defendant's expenses to Memphis, no attempt was made to prove a contract, either express or implied, between the defendant and the plaintiff in regard to the matters in the set off account.

The plaintiff had no connection whatever with the agreement between Atkinson and the defendant, by which the defendant was to be paid the amount of the ten per cent. deductions he might obtain from Atkinson's creditors, and though the payment was contingent upon the plaintiff paying the drafts, he evidently could not be held liable to the defendant for the amount of such deductions for failing to do so.

The charges for the protest fees, which the evidence shows were intended also to include the damages on the previous drafts, do not even have the promise of Atkinson to rest upon. The evidence does not show that he promised to pay the defendant those amounts. Why the plaintiff should pay the defendant the $75, which he as the agent of Atkinson deducted from Mrs. Belser's notes is equally as difficult to conceive. Of the sum received from her $3,300 were applied to the discharge of the debt due the plaintiff by the defendant and Atkinson, and the remainder upon the individual debt of Atkinson. There could be no more reason for holding the plaintiff liable to pay or make good the deduction made to Mrs. Belser for prompt payment in order that Atkinson might not be delayed in getting the money, than for holding the creditor liable to his debtor for the interest or discount the latter may have paid the bank to procure the means of paying his debt. The deduction was not made for the plaintiff's benefit but for Atkinson's, nor did the defendant thereby suffer any loss or injury.

If the defendant had any privity with the plaintiff's agreement to accept Atkinson's draft, a question not necessary for us to determine, the damages he claims on account of plaintiff's failure to comply with it, are too remote and too purely speculative to be the foundation of an action or admit of compensation. *Non remota sed proxima causa spectatur*.

Mr. Greenleaf says : The damages to be recovered must always be the natural and proximate consequences of the act complained of. This rule is laid down in regard to special damages; but it applies to all damages. 2 Green. on Ev. 256-261 ; Sedg. on Dam. 65, 73, 76, 79 ; *Blanchard* v. *Ely*, 21 Wend., 342.

The last charge is obnoxious to another objection. Unliquidated damages cannot be the subject of a set off. Newm. Plead. and Prac. 584 ; Barb. on Set Off 25, 84 ; *Woodruff* v. *Loflin*, 4 Ark., 527.

Nor do we think the defendant entitled to recover anything on account of his visit to Memphis, although he went there in accordance with the request of the plaintiff, because it is manifest that he went there for the purpose of meeting the plaintiff to pay the debt he and Atkinson owed him, and to discharge their obligation to him. In doing so we cannot think he did more than his plain duty, or conferred any benefit on the plaintiff for which he should make compensation.

The performance of that which a party is under a legal or moral obligation to do, is not such a consideration from which a promise may be implied. 1 Par. on Con., 437 ; *Smith* v. *Bartholomew*, 1 Met., 276 ; *Callagan* v. *Hallet*, 1 Caine, 104 ; *Stick* v. *Myrick*, 2 Camp., 317.

The plaintiff should have had a new trial, and for the error in refusing it the judgment of the Court below is reversed and the cause remanded to it, with instructions to grant the plaintiff a new trial.