THE BOARD OF COMMISSIONERS OF CUMING COUNTY, PLAINTIFF IN ERROR, v. J. S. C. TATE, DEFENDANT IN ERROR.

**District Attorneys:** PAY OF DEPUTIES. No authority exists for the payment by a county of compensation to a deputy district attorney or a person appointed by the court to perform the duties of district attorney during his absence.

ERROR to the district court of Cuming county. Tried below before BARNES, J.

*Uriah Bruner,* for plaintiff in error.

*M. McLaughlin* and *Valentine & Tate,* for defendant in error.

COBB, J.

It is not deemed necessary to notice either of the questions of pleading and practice presented in this case further than to say that by answering, the plaintiff in error waived any error which might have intervened in overruling the demurrer and motion to strike out a part of the petition; that if there is a cause of action expressed in the petition it is admitted in the answer, and in that case there would be no error on the part of the court in rendering judgment on the pleadings; and that the amendment allowed is clearly within the statute. We are therefore left to the main question: Is the plaintiff in error, the board of county commissioners of Cuming county, liable to the defendant in error for his services as assistant district attorney in the case stated in the record?

The office of district attorney was unknown to the laws of the late territory of Nebraska; but under pro-

15

visions of law each organized county was empowered
to elect a prosecuting attorney, whose term, office, pow-
ers, duties, etc., are set forth in §§ 15 to 21 inclusive,
chapter 3 of the Revised Statutes 1866.    Among the
other provisions of the said sections was that cited by
defendant in error: " On application of any prosecu-
ting attorney    *    *    the court may appoint an assist-
ant prosecuting attorney, for whose services the court
shall make an allowance," etc.    But at the first ses-
sion of the state legislature an act was passed and ap-
proved June 11, 1867, entitled " An act to provide for
the election of district attorneys, and to define their
duties."    The provisions of this act in terms abolished
the office of prosecuting attorney after the second
Monday in August, 1867; and although it did not in
terms repeal the provisions of §§ 15 to 21, chap. 3,
Revised Statutes, above quoted, yet the said act of
June 11, 1867, is complete within itself.    [Gen. Stat.,
96.]  It covers the whole ground.  ·Section 5 provides
that " the district attorney may, at his discretion, ap-
point one or more deputies, for whose official acts and
fees he shall at all times be responsible."

There is then no longer any standing room for the
provisions of chap. 3, Revised Statutes, 1866, author-
izing the court, on the application of the prosecuting
attorney, to appoint assistants, and making the county
responsible for the pay upon the allowance of the
court.    *Smails v. White*, 4 Neb., 353, and authorities
cited in the opinion.

Under the old system, when each county elected its
own prosecuting attorney, and fixed his salary, it may
frequently have happened that lawyers, somewhat
lacking in experience and ability, were elected to that
office in some of the counties; hence the propriety of
the provision of the earlier law, and the probability of
its not unfrequent application.    But upon the change

from territorial to state government, the people through their representatives saw fit to change the whole system. They abolished the office as it then existed, with all of its emoluments, powers, and liabilities, and provided for the election of but one district attorney for each judicial district, and fixed his salary at what was deemed a sufficiently respectable figure to secure the services of good lawyers; and what is more, they made him a state officer, and thereby, in a great measure, withdrew the responsibility of the prosecution from county concern. While the law makes it the duty of the district attorney to appear in the district court at each term of the same in each county in the district for which he was elected, and prosecute and defend all actions, civil and criminal, and all matters whatsoever, in which the state or county may be interested, etc., yet, as there may be and often are cases where, on account of sickness or other cause, the district attorney cannot attend, hence the provision authorizing him to appoint a deputy. But if he cannot " work, neither shall he eat." He must turn over his salary, or a part of it, to pay his deputy.

Defendant in error cites *Hopkins v. Clayton County*, 32 Iowa, 15. Judge Cole, in the opinion of the court in that case, says : " The duties of the district attorney are prescribed in part by the revision, section 374, and it is therein further provided, that nothing in said section contained shall prevent the county judge (whose powers have now devolved on the board of supervisors), whenever he may deem it necessary, from employing an attorney to prosecute or defend in any case properly belonging to the duties of the district attorney."

In that case an attorney had been employed by a committee of the board of supervisors under direction of the board to perform duties, rather as a detec-

tive than as an attorney, in unraveling a case—the mur-
der of the Hagerty family by one Andrew Thompson,
a case which, by reason of the number of the victims
(six) and the attending circumstances of atrocity and
cunning on the part of the murderer, might almost
justify a departure from legal rules if necessary to in-
sure conviction. Yet we have seen that the board in
this case acted upon express provisions of law of that
state. He also cites *State v. Fitzgerald*, 49 Iowa, 260.
The defendant in that case was indicted for adminis-
tering drugs to a woman with intent, etc. The
friends of the woman procured a lawyer to assist the
district attorney in the prosecution. The defendant
objected to such assistant prosecutor being allowed to
appear in the case. The holding was that whether
assistant counsel be allowed to appear was a question
within the discretion of the court and the district at-
torney. There was no question of pay in the case.

He also cites *Franklin v. Kelly*, 2 Neb., 87, and cases
there cited, in support of the proposition that it has
been the custom of the county boards to pay assist-
ant prosecutors so long, that such custom has acquired
the force of positive law. The point in that case
claimed to be applicable to the case at bar was upon
the construction of the pre-emption law of 1841 as to
the effect of deeds made by the pre-emptor before the
receipt by him of the patent for such lands. The
court held that the contemporaneous construction
placed upon the act, as evidenced by long and univer-
sal usage, would govern in a case of doubtful mean-
ing. The court in that case also cite *McKean v. De-
lancy's Lessees*, 5 Cranch., 22, and no doubt the opin-
ion of Chief Justice Marshall, in which he says:
" But in construing the statute of a state on which
land titles depend, infinite mischief would ensue
should this court observe a different rule from that

which has been long established in the state," went far to control the opinion in the Nebraska case.

There are many authorities to the effect that reasons of public policy will justify a court in adhering to— what it may even believe to be—a false construction of a statute, where a departure from such construction would have the effect to unsettle the titles to a considerable portion of the real property of the people of the state. I have referred to *Franklin v. Kelly* thus at some length to show that the learned judge who wrote the able opinion in that case could not have intended to approve of the position taken by counsel in this case. But we have no evidence of the existence of such a custom as that contended for. Certainly, if such custom has existed, it has been far from universal or even general, and lacking in every essential element by virtue of which a custom may, in the course of time, assume the force of law.

Counsel in their brief say that the boards of county commissioners all over the state have employed and paid by the year attorneys to perform duties belonging to the district attorney, etc. The statutes (sec. 47, on p. 368, laws of 1879), provide for the employing by the county board of an attorney for certain purposes, and with certain limitations; but from June 11, 1867, to September 1, 1879, they possessed no legal power to employ or pay an attorney at law for any purpose whatever, except in actions brought to restrain the collection of taxes.

The judgment of the district court should therefore be reversed and the cause dismissed.

JUDGMENT ACCORDINGLY.