| 63 433|
| 65 170 |

# SCHOOL DISTRICT NO. 15. v. SCHOOL DISTRICT OF WALDRON.

## Opinion delivered February 13, 1897.

SCHOOLS — FORMATION OF NEW DISTRICT — DIVISION OF SURPLUS.— Under Sand. &. H. Dig. § 6992, providing that, on the formation of a new school district from the territory of an existing district, in case there be a surplus fund on hand, it shall be entitled to a proportionate part of such fund, a newly formed district is not entitled to share in a tax voted by the old district to sustain the schools for the ensuing year, but not levied at the time of the formation of the new district, but only in the surplus remaining after paying all the expenses of the year's schools. (HUGHES, J., dissenting.)

Appeal from Scott Circuit Court.

PRESTON C. WEST, Special Judge.

*A. G. Lemon* and *Daniel Hon* for appellant.

The county court has no power to levy a school tax; it must be voted by the electors of each school district. When so levied, it becomes a fund to be placed to the credit of the district levying and paying it, and is not subject to be apportioned to any district subsequently created by law out of part of its territory. Const. Ark. art. 14, sec. 3; Sand. & H. Dig., sec. 7033; 32 Ark. 496; 32 Ark. 131; 33 *id.* 716; 38 *id.* 271; 42 *id.* 100; 93 Cal. 414. There is no statutory remedy given to recover, in a proceeding commenced in the county court. 60 Ark. 124; 40 Mich. 551. There is no provision for apportionment or division of a fund between a common school district and a special school district. 21 Am. & Eng. Enc. Law, p. 847. It is only when there is a *surplus* that this can be done (Sand. & H. Dig., sec. 6992, 6994), and these sections do not apply to this case. 60 Ark. 124. There was no *surplus*, the entire fund having been lawfully contracted away. When the tax was voted, it was the duty of the directors to provide for schools, unless otherwise instructed at the annual meeting. 45 Ark. 121; Sand. & H. Dig., sec. 7029; 18 Mo. App. 266; 46 Ohio St. 595; 44 Ohio St. 278; 33 Ark. 497. A school tax cannot be appropriated to any other purpose, nor to any other district, etc. Const. art. 14, sec. 3. The fact that a portion of the tax was paid by tax payers residing or owning property in the school district of Waldron does not change the law. The word "*district*" only refers to the body corporate, and not to territory. Sand. & H. Dig., sec. 6986; 18 Mo. App. 266; 93 Cal. 414. 60 Ark. 124 settles only the question of the legality of the formation of appellee district, but not the question involved here, and it is not

*res judicata.* Bouvier, Law Dict. vol. 2, p. 457. The county court had no jurisdiction. 15 Ark. 381; 57 *id.* 299. Appellee's remedy, if any, was by suit in equity. 40 Mich. 551. The county court having no jurisdiction, the circuit court acquired none on appeal. 6 Ark. 182.

*S. R. Cockrill* and *Miles & Miles* for appellee.

The county court alone has power to levy county taxes. Const. art. 7, sec. 30; Sand. & H. Dig., sec. 1276, subd. 8; 42 Ark. 100; 34 *id.* 188, 193–4; 36 *id.* 641; 33 *id.* 716. The vote to levy the tax was only an unexecuted power to levy; no lien on property, etc., until the county court made the levy. This was done after the creation of appellee. 93 Cal. 411; 5 Pick. 332; 5 Gray, 413. "*Assessment,*" as used, means levy by the county court. 46 Ark. 77–8. School District No. 15 had no power to collect the tax. 4 Mass. 537; 5 Gray (Mass.), 413; Const. Ark. art. 14, sec. 3. The county court had jurisdiction. Const. art. 7, sec. 28; Sand. & H. Dig., secs. 6992 to 6995, etc.; 54 Ark. 468; 4 N. Y. 425–432. An apportionment like this has often been sustained. 91 Pa. St. 182; 34 At. Rep. 33; 64 Ind. 275; 54 Iowa. 77. The appeal in 60 Ark. 124 was pending in this court when this tax was levied. The reversal of a judgment restores parties litigant to the same condition in which they were prior to its rendition. 2 Freeman, Judg. secs. 481–2; 34 Ark. 569, 580.

BUNN, C. J. This proceeding was commenced by petition on the part of appellee, in the Scott county court, at its July term, 1895, against appellant, for a distribution of funds alleged to be in the treasury of the county to the credit of appellant, but which, it was alleged, belonged in fact to appellee in part, and were the subject of apportionment between appellant and appellee districts. The prayer of the petition was

granted by the county court, and an order of apportionment entered, from which respondent appealed to the circuit court, where the judgment of the county court was sustained, and judgment entered accordingly. From this judgment, also, the respondent, district No. 15, appealed to this court.

On the third Saturday in May, 1894, as the law provided, the qualified electors of School District No. 15, as then constituted, met and, among other things, voted a school tax to defray the expenses of a school for a portion of the ensuing school year. It appears from the record that, at the time of said election, the tax thus voted was estimated to be sufficient to produce the sum of $800, which, added to the school revenue to be derived from other sources, and soon to come in, amounted in the aggregate to the estimated sum of $1,200, estimated to be sufficient to defray the expenses of operating the schools for six months.

Presumably, the directors of appellant district No. 15, in compliance with the law (section 7049 of Sand. & H. Dig.), made their estimate to the annual meeting of the district on the said third Saturday in May, 1894, of the expenses of the district for that year, including the expenses of a school for the period of three months for the next year, after deducting the probable amount of school moneys to be apportioned (the state fund and so forth), and also submitted an estimate of the expenses per month of continuing the school beyond the term of three months; and an estimate of whatever else might be necessary for the comfort and advancement of said school. These estimates are required to be made by the directors to the assembled electors of the district at the time of the annual meeting aforesaid, to the end that the electors may be the better enabled to vote intelligently on the subject of how long the school should continue during the year, and the rate of taxation necessary to

insure the desired object. These estimates therefore form the basis—the only basis—for the taxation thus sought to be had upon the property of the district.

In September, 1894, the directors of appellant district contracted with a sufficient number of teachers, and during the term expended other funds sufficient to have the school continue for the period aforesaid, and these incidental expenses and contracts for the teaching force absorbed nearly all the revenues which actually come into the county treasury to the credit of appellant district. The school was taught, beginning the latter part of September, 1894, and closing in March, 1895, having been patronized and attended by students residing in the town of Waldron and the adjacent territory included in said district No. 15, although the record shows a portion of the children in the town of Waldron attended the school conducted under the auspices of the friends of appellee school district a portion of the year.

It appears that the appellant district No. 15, before the formation of appellee separate school district of Waldron, included all the territory, no more, no less, afterwards included in both districts; that is to say School District No. 15 was the original district, which included, besides a suburban territory, the town of Waldron.

When the annual school election at which the tax aforesaid was voted on the third Saturday in May, 1894, was held, the special School District of Waldron had no existence, and of course it did not enter into the estimates, except as it was a part of the original district No. 15, and the tax was voted in the name of the latter and for its benefit, and was so extended on the tax books against the property of the original district, and, it appears, was collected and turned into the treasury to the credit of said district No. 15, to be drawn out upon the warrant of its directors. It appears also from the

record that the appellee district, the special School District of Waldron, was organized on the 7th day of July, 1894, and that, at the instance of certain persons in Waldron and in the remainder of district No. 15, the attorney general of the state instituted proceedings in the nature of *quo warranto* against the special district to have its organization declared invalid, and that, upon final hearing on appeal, this court, in .January, 1895, held the organization of the special School District of Waldron to be valid. *Beavers* v. *State*, 60 Ark. 124.

The present proceeding, although begun in the summer of 1895, has for its object the apportionment by the county court of the entire current revenues of School District No. 15, derived from taxation and otherwise, as aforesaid, for the school year of 1894–1895, and is based upon section 6992 of Sand. & H. Dig., which reads as follows, to wit : ''In case there be a surplus fund on hand at the time of the formation of said (new) district, it shall be entitled to a proportionate part of said fund, the same to be ascertained and determined by the county court of the county in which said new district may be created, as in the judgment of said court may be considered right and proper.'' This section, we conceive, is made applicable to special school districts, as well as to common school districts, by the provisions of section 7113 of Sand. & H. Dig.

In the case of the organization, by the county court, of a new district out of the territory of an old one, it will be seen from the statute quoted that it is only the *surplus*, or funds in excess of what is reasonably necessary to operate the schools of the old district, that are subject to apportionment by the county court clothed in such case with power to do what is right and proper in the premises.

The tax voted by the electors of the original district No. 15, on the third Saturday in May, 1894—the annual

school meeting—became a source of revenue to that district to be appropriated to the objects named by the electors of that district, and subject alone to be drawn upon by its directors for such designated purposes. There was no other contingency than such as might arise from changing and varying valuation of property on the tax books. The report of the election presumably was duly made to the county court, and that court had no discretion in the matter. Its duty was to ascertain the rate voted by the electors of the district, and then cause the extension to be made on the tax books—a purely ministerial function, refusing to perform which it doubtless could have been compelled to perform. *Maddox* v. *Neal*, 45 Ark. 121.

Equally incumbent upon the directors of School District No. 15 was it to see that the school was taught as directed by the electors, and consequently to make all necessary contracts with teachers, and to pay incidental expenses that might become necessary to attain the object in view.

When the tax was placed on the tax books—"levied," as it is termed, it related back to the election on the subject, and took effect from that event, in so far as it concerned the interest of the district and the conduct of the officers managing and controlling its affairs. The directors, after the election, might anticipate the revenue thus to be derived, in making contracts with teachers and in making contracts for other things pertaining to the conduct of the schools for the current term. In fact, such is nearly always a necessity.

The appellee never in fact became an operative organization until its organization was declared to be valid by this court in January, 1895, a little before the school of the old district No. 15, would close. The statute authorizing the county court to apportion a surplus of the common fund on the formation of new

district, which we have quoted, makes only the surplus fund on hand apportionable by the county court. The fund sought by the petition of appellee to be apportioned is not a surplus fund. On the contrary, it is the fund voted, collected and set apart to sustain the school for the current year, of School District No. 15, against which and on the faith of which the directors had the . right to contract and obligate themselves officially; and to that extent the fund was already devoted, and must be appropriated to the faithful performance of these contracts and obligations; and to that extent they are not surplus funds, but funds legitimately pledged and from the beginning bound.

Our opinion is, therefore, that if there remained a surplus or excess of the funds derived as aforesaid in the county treasury, after all the expenses of the year's school had been paid, that surplus, whatever it might be, should be apportioned as provided in the section quoted, for that, and that alone, is to be regarded as the surplus referred to therein.

Reversed and remanded.

RIDDICK, J., being absent, did not participate.

HUGHES, J., (dissenting.) The vote of the tax by the electors of School District No. 15 was regular, and authorized the county court to levy the tax voted upon all the property then in that district, but it was not a completed levy until the action of the county court levying the tax, but was inchoate and incomplete till then. This tax was voted in May, 1894. On the 15th of July, 1894, the School District of Waldron was legally organized out of territory which before its organization constituted part of School District No. 15. October 1, 1894, the county court levied the tax, which had been voted in May, 1894. At the August term of the circuit court of Scott county in 1894, the organization of the

School District of Waldron was declared illegal and void. In January, 1895, this decision was reversed, and it was held that the School District of Waldron was legally organized on the 7th of July, 1894.

The effect of this is that the School District of Waldron was all the time from July 7, 1894, a lawfully organized school district. But for the supposition which the county court erroneously indulged by reason of the erroneous decision of the circuit court that the School District of Waldron had no existence, we must presume that the five-mill special tax voted by the electors of School District No. 15, as constituted when it included the territory, population and taxable property of the School District of Waldron, afterwards formed, would have been levied in the name of the School District of Waldron. In contemplation of law, it would seem that it was levied for that district, though levied in the name of School District No. 15. This tax was collected in 1895, and paid into the treasury of Scott county on July 13, 1895. Of course, this tax could not be distributed till it was collected and paid into the treasury, and at the time it was collected and paid in there was no longer any question about the legality and existence of the special School District of Waldron. This had been settled by the supreme court in January, 1895. And, upon any distribution thereafter made, the School District of Waldron should have had allotted to to it the taxes that had been levied upon the property in the bounds of that district.

As a matter of law, it could make no difference that a contract for a school had been made to be discharged out of the taxes by School District No. 15, which school the children of the School District of Waldron attended. If School District No. 15 saw fit to maintain a school of its own volition, and allow the children of the School District of Waldron to attend it, it is difficult to see how

this would in law excuse district No. 15 from accounting to the School District of Waldron for money of the latter which it had collected and used, however it might appear according to natural equity and justice.

It is said in the opinion of the court that the county court had power to distribute the surplus only, and that there was no surplus. But the whole fund was on hand when the money was paid into the treasury. District No. 15 having appropriated the whole, there could be no surplus afterwards. If the School District of Waldron was entitled to part of a surplus, on the theory that its property paid part of the tax, why was it not entitled to its share of the whole, according to what the property within its bounds had paid ? If one come into possession of money which belongs to another, it is no answer to the demand of the owner to say that the party who received the money had obligated himself to pay it out, or had paid it out, in settlement of his own obligations. The whole theory of the law of taxation in this state is that those who pay the taxes shall be entitled to control and have the benefit of the expenditure of them.

It does not appear in this case that the School District of Waldron consented to the expenditure of the money collected off the property within its bounds, by virtue of the tax, by School District No. 15. It matters not that the School District of Waldron levied no tax; those who voted the tax were afterwards erected into a special school district. They paid the tax levied upon their property. Shall the fact that they were, after the tax was voted, but before its levy was completed by the county court, and long before the tax was collected, organized into a separate district deprive them of their just share of the tax? Suppose district No. 15 had made no contracts to absorb this money, is there any doubt that the School District of Waldron

would be entitled to its share of it? What difference can it make in law that School District No. 15 had made such contracts? They were its contracts, and it had no right, in my opinion, in strict law, to expend that part of the tax that had been levied upon the property of and paid by the citizens in the territory out of which the School District of Waldron had been formed before the tax levy of the tax was completed by the action of the county court levying the tax voted. If the county county court had the power to make the distribution it did make, then I am of the opinion that the judgment should be affirmed. But I am not satisfied that the remedy of the School District of Waldron against district No. 15 was not an action for money had and received.