WILLIAMS v. THE STATE.

65   159
74   365
e74  366

Opinion delivered March 26, 1898.

1. EXECUTION—TO WHOM MONEY COLLECTED PAYABLE.—Where, in a suit brought by the state for the benefit of a county and of certain school districts, it appears of record that a certain firm of attorneys appeared for and represented the plaintiff, the sheriff will be protected in paying to such firm the money collected by him under execution in favor of plaintiff, and will not be liable to the penalty prescribed by Sand. & H. Dig., § 4252, for a failure to pay over money collected upon an execution on demand, whether such firm of attorneys was duly authorized to represent the plaintiff or not. (Page 168.)

2. PAYMENT INTO PUBLIC TREASURY—CONSTRUCTION OF STATUTE.—Sand. & H. Dig., § 7192, which requires that "the sheriff or other officer collecting any money due to the state shall pay the same into the public treasury," etc., has reference solely to the state herself, and not to any of her political dependencies or subdivisions. (Page 172.)

Appeal from St. Francis Circuit Court.

HANCE N. HUTTON, Judge.

*John Gatling, Fletcher Roleson* and *Norton & Prewitt,* for appellant.

The statutory proceeding for summary judgment must be strictly construed. 25 Ark. 353. The statute authorized the sheriff to pay the money to the attorneys of record, and he is not liable to summary judgment, unless he fails to pay the amount collected on execution, on demand of the plaintiff or his attorneys. Sand. & H. Dig., § 4252. There was nothing irregular in the employment of the attorneys. . The state, though the nominal, is not the real plaintiff. 39 Ark. 172; 30 Ark. 71; 17 Am. & Eng. Enc. Law, 512, and notes, and note 3, p. 513. The prosecuting attorney had no authority to make the demand. "Public treasury," as used in § 7192, Sand. & H. Dig., refers only to the state treasury. It has no application to county treasuries. 27 Ark. 628. The summary proceeding, with its penalties, can only be used where the conduct is dishonest, oppressive or clearly illegal. 31 Atl. 611; 23 Atl. 35; 18 So. 297.

*E. B. Kinsworthy*, Attorney General, for appellee.

The attorneys to whom the payment was made were not legally authorized to receive it. The law authorizing a contract with a county or state must be strictly pursued, or the contract will not be binding. 4 Am. & Eng. Enc. Law, 359. To charge a county for services, there must be some legal authority for the rendering of same. 4 Am. & Eng. Enc. Law, 366; 9 Ind. 296; 97 Ind. 176; 28 Howard (N. Y.), Pr. 22. The county court has exclusive jurisdiction to authorize contracts and to order payment of claims against the county. Sand. & H. Dig., § 1233; 44 Ark. 225; *ib*. 318; 47 Ark. 80. The attorneys to whom payment was made were unauthorized by law, and they cannot by contract be made legal representatives of the county. ᶦ Sand. & H. Dig., § 1237; 31 Ark. 266; 56 Ark. 581; 57 Ark. 487; 54 Ark. 645; 57 Fed. 1030; 36 Ark. 646; 61 Ark. 74. It was the duty of the prosecuting attorney to attend to this suit. Sand. & H. Dig., §§ 6013, 6014 and 6015. The county court had no authority to employ counsel other than that provided by law. 18 S. W. 1142; 24 Barb. 226; 8 Kas. 487; 12 Neb. 244; 10 Neb. 193; 68 Ind. 575; 69 Ind. 441; 22 Wis. 69. Nor had the treasurer such right. 50 Ark. 566. Nor could the prosecuting attorney delegate his authority. 1 Am. & Eng. Enc. Law, 595. The county is simply an agent of the state, and the money collected by the sheriff belonged, not to the county, but to the state. 42 Ark. 54; 32 Ark. 51; 34 Mo. 546; 8 Cal. 98; 25 Ill. 187. It matters not whether the money belonged to the county, the school fund, or the state. Appellant should have paid it into the treasury, and not to any attorney, authorized or unauthorized. Sand. & H. Dig., § 7192. The demand made by the prosecuting attorney was sufficient. Sand. & H. Dig., § 6013. After such demand, judgment against the sheriff was proper. Sand. & H. Dig., §§ 4245 to 4254, inclusive.

*John Gatling, Fletcher Roleson* and *Norton & Prewett*, for appellant on motion for rehearing.

The right of the sheriff, who has collected moneys for a litigant, to pay same to his attorney of record, and be thereby

discharged, is the same whether the litigant be a person, a *quasi* municipal corperation, or a municipal corporation. 39 Ark. 50. Sec. 7192, Sand. & H. Dig., has no application to any money except such as is payable into the state treasury. 27 Ark. 628. All summary proceedings like the one at bar are based upon contempts. The courts exercise this jurisdiction to prevent dishonesty of their officers, and, if no such dishonesty appears, the complaining party will be left to his action at law. 4 Black. Comm. 283; 10 Wall. 491; 27 Fed. 195; 31 Atl. 611; 14 Atl. 397; 19 Pa. St. 95; 1 Curtis (U. S. C. C.), 186; 2 Wils. 371; 2 Moore, 665; 1 Bing. 102; 4 Burr. 2060; 2 Blackstone, Rep. 780; 1 Chitty, Rep. 661; Murfree, Sheriffs, §§ 969, 970. In the absence of misconduct on the part of the sheriff, he is entitled to a discharge. That the county was really liable for the fee, see 55 Ark. 419. It was not the duty of the prosecuting attorney to attend to such cases for school districts. Sand. & H. Dig., § 7087.

HUGHES, J. The appellant, as sheriff of St. Francis county, collected upon an execution in his hands, in favor of the state, the sum of $9,448.44 of J. B. Wilson and others. He paid to the plaintiff in the execution, of the amount by him collected, the sum of $8,340.42, leaving a balance in his hands of $944.83, which amount he paid to Norton & Prewitt, attorneys of record for the plaintiff in the execution, and took their receipt for the same. Upon notice, the prosecuting attorney for the district moved for and obtained a summary judgment against the appellant sheriff and the securities on his bond for the amount paid to Norton & Prewitt, having made demand therefor previous to giving notice of his intention to move for judgment. The judgment was for the sum of $944.83, as principal, and the further sum of $566.88, being damages computed at the rate of ten per cent. per month from the time demand was made, and for all costs. The sheriff appealed to this court.

The case was tried before the court upon the following agreed statement of facts:

"In this cause it is agreed that the suit styled '*State of Arkansas* v. *J. B. Wilson et al.*,' in which the execution issued

was instituted by H. F. Roleson, then prosecuting attorney, and Norton & Prewett, at the instance and request of J. W. Aven, incoming treasurer of St. Francis county, against J. B. Wilson, the outgoing treasurer of said county, and the sureties on his bond as such treasurer. That likewise, at the instance and request of said incoming treasurer, they acted for him in the county court (prior to the bringing of said suit in the circuit court), where they had a balance struck against said outgoing treasurer, and an order on him to pay over, and, after all the money had been made on said execution except 2 per cent., they again litigated the said J. B. Wilson about the unpaid 2 per cent. in a cause which is now in the supreme court of the state of Arkansas. That the execution went into the hands of the defendant, W. E. Williams, on the judgment recovered against the said J. B. Wilson and his bondsmen, was sued out and placed in his hands by Norton & Prewitt, and when this defendant had in his hands the sum of $1,230.05, a balance collected on said execution, the said Norton & Prewitt, as attorneys of record in the cause in which the execution issued, demanded that he pay said sum to them, which he did, but, before doing so, he asked the advice of lawyers in good standing,—M. T. Sanders of Helena, and R. J. Williams of Forrest City, and the attorney general of the state, J. P. Clarke, all of whom told this defendant that, if Norton & Prewitt were attorneys of record in the cause in which the execution issued, it would be proper to pay it to them. He did then pay it to them, and took their receipt, a copy of which is exhibited. H. F. Roleson, the prosecuting attorney, was not in the county when the execution was sued out, and the money collected and paid.over. Afterwards, J. P. Clarke, the attorney general, told this defendant that when he (the attorney general) told him (defendant) that it would be right to pay Norton & Prewitt, he supposed that Norton & Prewitt had been employed by the county court. .It was at the instance and request of said J. W. Aven that H. F. Roleson engaged in the case and prosecuted it, and at the instance and request of said Aven that Norton & Prewitt engaged in the case and prosecuted it. Norton & Prewitt turned over to the treasurer the amount they receipted defendant for, less $944.83, which they retained as attorney's fee for counsel engaged in

the case. And the parties being unable to agree as to whether or not any demand had been made upon the defendant other than the demand of Norton & Prewitt, which he complied with. John T. Hicks testified: 'A few days prior to the filing of the notice herein, which appears to have been filed on the 27th of September, 1895, I approached the defendant, W. E. Williams, and said to him that, as attorney for the state, I desired to make formal demand for the money involved in this controversy, and asked him if he would waive a demand in writing, and he remarked at the time that he would waive a more formal demand, or words to that effect.' W. E. Williams testified that he remembered having a conversation with John T. Hicks on the subject, but he could not remember that any demand was made on him, or that he was requested to or agreed to waive written or formal demand. This was all the testimony.

"JOHN T. HICKS, prosecuting attorney.

"JOHN GATLING.

"H. F. ROLESON, and

"NORTON & PREWITT, for defendant."

The defendant moved the court for a new trial, and for cause said:

"1. That the court erred in holding that Norton & Prewitt could not be attorneys of record in the case in which the execution issued (State of Arkansas *v.* J. B. Wilson.)

"2. That the court erred in holding that the receipt of Norton & Prewitt to the defendant was insufficient to protect defendant, in whole or in part.

"3. That the judgment of the court is contrary to the facts.

"4. That the judgment of the court is contrary to law."

A majority of the court is of the opinion that the prosecuting attorney was the proper person to make demand upon the sheriff, as he was the representative of the state in the suit which was brought in the name of the state for the use of the county and the school districts. We think, also, that there is evidence tending to show that the sheriff waived a more formal demand than that which was made upon him by the prosecuting attorney to pay over the money. We are of the opinion that it

was the duty of the sheriff to pay over the money to the county and the school districts for which it had been collected, and that the receipt of Norton & Prewitt did not protect him against the payment of the principal of the same, with lawful interest thereon from the time it was collected.

Under the head of "State, suits by," in section 7192 of Sandels & Hill's Digest, it is provided that "the sheriff or other officer collecting any money due to the state shall pay the same into the public treasury and obtain a quietus therefor, and not to the attorney general, or any other attorney or agent employed in the collection of the same, or to any other person, unless otherwise directed by law." There is a difference of opinion as to whether this applies to other than money collected for the state exclusively. But, at all events, it was the duty of the sheriff to pay this money to the county and school districts for which it had been collected.

It was not competent for the sheriff to credit the claim of the attorneys, or pay it, without direction so to do from the proper authority. The money should have been paid into the proper custody, and, if the attorneys were entitled to fees, their fees should have been allowed by the proper authority, and have been paid by warrants on the proper treasuries. It is within the exclusive jurisdiction of the county court "to audit, settle and direct the payment of all demands against the county." Sec. 1173, Sand. & H. Dig.; sec. 28, art 7, const. 1874. As to the manner of auditing and paying claims against the county, see sections from 1235 to 1241, inclusive, of Sandels & Hill's Digest. By section 7651 of Sandels & Hill's Digest it is made the duty of the school directors of any school district "to draw orders on the treasurer of the county for the payment of wages due teachers or for any lawful purpose," etc. All demands against a county are required by statute to be presented to the county court, properly verified, for allowance or rejection. Section 811, Sandels & Hill's Digest. The county court has exclusive original jurisdiction of claims against the county. *Shaver* v. *Lawrence County*, 44 Ark. 225.

By sec. 7184, Sand. & H. Dig., it is made the duty of the prosecuting attorney, in any district where a suit is brought

in favor of the state, or any suit is brought in which the state is interested, to prosecute the same.

It is apparent that the sheriff was bound by law to pay all the money collected on the execution to the county and school districts for which it had been collected, and that he and his sureties upon his official bond are bound to pay the sum collected, with lawful interest from the time of its collection. But are they liable, under the circumstances of this case, for the penalty of ten per cent. per month for failure to pay it over strictly in accordance with law? Having paid it to the attorneys of record, who were employed by the treasurer (who was entitled to the custody of the fund) to prosecute the suit, and having been associated with the prosecuting attorney therein, and, as the evidence shows, having paid it to the attorneys of record upon the advice of eminent lawyers that he would be justifiable in paying it to them, are they legally liable for the penalty of ten per cent. per month? It is not pretended that the sheriff or the counsel acted in bad faith, or that the counsel did not render valuable services in the case. There was no failure or refusal to pay over, but a payment, through an honest mistake, to persons apparently entitled to receive the money—attorneys of record for the plaintiff in the case. A sheriff is liable to have a summary judgment rendered against him and his sureties, "for failing to pay over money collected upon an execution, on demand of the plaintiff, his agent or attorney," * * * "for the amount so collected and ten per cent. per month damages from the time such demand was made." (Sec. 4252, Sand. &. H. Dig., subdiv. 2.) Are we to say that nothing will mitigate the rigor of this highly penal and severe provision of the statute? A majority of the court have not so concluded.

There really was no failure to pay by the sheriff, within the meaning and spirit of the statute subjecting a sheriff to a penalty of ten per cent. per month for a failure to pay over money collected by him on an execution. There was no corrupt motive, no inexcusable negligence or ignorance of law, upon his part. Mr. Murfree, in his work on Sheriffs, § 945, says: "Many statutes prescribe penalties against sheriffs, in the event of neg-

ligence and misconduct in office. Statutes of this character are so highly penal that very slight circumstances are sometimes held to exempt officers from their operation. He who would invoke such statute must bring himself within both the letter and spirit of the law." It is held in Kentucky that "if the failure to return an execution be occasioned by such casualties, or inadvertences, or mistake, or omissions, as men of ordinary prudence are subject to, and there has been no improper motive in the case, a good cause is made out under the statute." *Bassett* v. *Bowmar*, 3 B. Monroe (Ky.), and cases cited. Our court holds otherwise. We think the circumstances of the case at bar do not bring it within the principle and spirit of our statute, and that they ought to protect the sheriff against the infliction of the same penalty imposed by the statute upon a sheriff for failure to pay over money collected.

The judgment of the circuit court giving the penalty of ten per cent. per month is reversed, and the cause is remanded, with directions to so modify the judgment in this case as to exclude all interest save at the rate of six per cent. per annum from the date when the money was collected. In other respects the judgment is affirmed.

MR. JUSTICE BATTLE dissents.

## OPINION ON MOTION FOR REHEARING.

### Delivered May 28, 1898.

WOOD, J. This appeal is from a judgment for $1,511.71, aggregate amount of principal and damages by way of penalty, recovered by appellee against appellant in a proceeding for summary judgment instituted by John T. Hicks, prosecuting attorney for the first judicial district. The facts forming the basis for the contention of the respective parties, and upon which the cause was heard, are as follows: The State of Arkansas recovered of Jno. B. Wilson *et al.* the sum of $9,410.43, of which, the sum of $8,100.38 belonged to the several school districts of St. Francis county, and $1,310.55 belonged to St. Francis county.

The above amount was collected by the sheriff on execution. Other facts appear in the following statement, to which

the parties agree: "In this cause it is agreed that the suit, styled '*State of Arkansas* v. *J. B. Wilson et al.*,' in which the the execution issued, was instituted by H. F. Roleson, then prosecuting attorney, and Norton & Prewitt, at the instance and request of J. W. Aven, incoming treasurer of St. Francis county, against J. B. Wilson, the outgoing treasurer of said county, and the sureties on his bond as such treasurer; that, likewise at the instance and request of said incoming treasurer, they acted for him in the county court (prior to the bringing of said suit in the circuit court), where they had a balance struck against said outgoing treasurer, and an order on him to pay over, and, after all the money had been made on said execution except 2 per cent., they again litigated the said J. B. Wilson about the unpaid 2 per cent. in a cause which is now in the supreme court of the state of Arkansas. That the execution which went-into the hands of the defendant, W. E. Williams, on the judgment recovered against the said J. B. Wilson and his bondsmen, was sued out and placed in his hands by Norton & Prewitt, and when this defendant had in his hands the sum of $1,230.05, a balance collected on said execution, the said Norton & Prewitt, as attorneys of record in the cause in which the execution issued, demanded that he pay said sum to them, which he did, but, before doing so, he asked the advice of lawyers in good standing,—M. T. Sanders of Helena, and R. J. Williams of Forrest City, and the attorney general of the state, J. P. Clarke,—all of whom told this defendant that, if Norton & Prewitt were attorneys of record in the cause in which the execution issued, it would be proper to pay it to them. He did then pay it to them, and took their receipt, a copy of which is exhibited. H. F. Roleson was not in the county when the execution was sued out, and the money collected and paid over. Afterwards, J. P. Clarke, the attorney general, told this defendant that when he (the attorney general) told him (defendant) that it would be right to pay Norton & Prewitt he supposed that Norton & Prewitt had been employed by the county court."

It was at the instance and request of said J. W. Aven that H. F. Roleson engaged in the case and prosecuted it, and at the instance and request of said Aven that Norton & Prewitt

engaged in the case and prosecuted it. Norton & Prewitt turned over to the treasurer the amount they receipted defendant for, less $944.83, which they retained as attorney's fee for counsel engaged in the case.

The cause is submitted upon the motion for summary judgment, the answer thereto and the agreed facts. *Can a summary judgment be rendered against appellant under the facts of this case?* is the only question for our consideration.

From sections 4245 and 4252 we excerpt the following: Judgments and final orders may be obtained, on motion, by plaintiffs in execution against sheriffs and their sureties, for failing to pay over money collected upon an execution, on demand of the plaintiff, his agent, or attorney; judgment [shall be] for amount so collected and ten per centum per month damages from the time such demand was made. This act was passed in 1857, and it is invoked by appellee to sustain the summary judgment. In 1875 the following was enacted: "All moneys collected by the sheriffs shall be paid to the person entitled to receive the same or his order, or his attorney of record." Sand. & H. Dig., § 3318. Construing the above sections together, it is clear that a summary judgment can now only be rendered against a sheriff when he has failed to pay over money collected to the person entitled to receive same, or his order, or attorney of record. Section 4252, *supra*, prescribes the penalty for failing to pay over money collected upon an execution upon demand, and designates the proper parties to make demand, while section 3318, *supra*, names the parties to whom the sheriff shall pay over the money. The parties entitled to receive the money were the county and the school districts, or their "attorney of record."

It is agreed that appellant paid over all the money collected by him. He paid $1,230.05 of it to Norton & Prewitt upon their demanding same of him. From this amount Norton & Prewitt deducted the sum of $944.83 as their fee for services rendered in the case, and turned the balance into the county treasury. So the simple question, at last, which determines the controversy is: were Norton & Prewitt attorneys of record in the case wherein judgment was obtained and execution issued, upon which the sheriff (appellant) collected the money? Or,

to put the question in a different form, does the record of the case in which the money was collected show that Norton & Prewitt were attorneys for the plaintiff in whose favor the judgment was rendered? The record of the judgment upon which the execution was issued and the money collected (exhibited with the answer) recites: "Now, on this day comes the state by H. F. Roleson, Esq., prosecuting attorney for the first judicial circuit, and Norton & Prewitt, his attorneys," etc. In the statement of facts agreed upon appears the following: "When this defendant (appellant) had in his hands the sum of $1,230.05, a balance collected on said execution, the said Norton & Prewitt, *as attorneys of record in the cause in which the execution issued*, demanded that he pay said sum to them," etc. So the answer is as simple and easy as the question: Norton & Prewitt were *attorneys of record*. This is purely a question of fact, and indeed there seems to be no controversy as to the fact that Norton & Prewitt were attorneys of record for the plaintiff who recovered the judgment upon which execution issued whereby the money was collected. That should properly end this case, for it shows that appellant has complied with the very letter of the statute requiring him to pay over money collected (Sand. & H. Dig., § 3318); and surely it would be a travesty upon justice to visit upon him the severe penalties denounced by § 4252, *supra*, when he has done the very thing which he is commanded and required to do.

But, notwithstanding the record of the case in which the execution issued shows that Norton & Prewitt were attorneys for the state in that case (about which there is really no dispute), it is nevertheless insisted that appellant is liable, for the reason that the relation of attorney and client in said case did not, and could not, in fact exist between the appellee and Norton & Prewitt. The state in that case was only a nominal party, the suit running in her name only because the bond of the defaulting treasurer was made to the state. The funds sued for belonged to the county and school districts. We are by no means prepared to concede that these corporations could have no attorney except the prosecuting attorney, and that the relation of attorney and client could not exist between them and Norton & Prewitt. This court, in *Conway County* v. *Little*

*Rock & Fort Smith R. Co.*, 30 Ark. 50, recognizes that there might be other attorneys for counties than the prosecuting attorney; and, as to school districts, they are independent corporations managed by a board of directors, and they may contract and be contracted with, sue and be sued. Sand. & H. Dig., § 6986. They may sue each other. *School Dist. No. 15* v. *School Dist. of Waldron*, 63 Ark. 433. Therefore, were the question before us, it might be pertinent to inquire how could the prosecuting attorney, if he is the only attorney a school district can have, bring a suit for one district against another, and defend the suit which he has brought, and thus be representing the plaintiff and defendant at the same time and in the same suit?

But, upon the undisputed facts of this record, we do not conceive that the question as to whether or not Norton & Prewitt sustained with the state the contractual relation of attorney and client in the suit wherein the execution issued is germane to this controversy. The state is not suing Norton & Prewitt for money improperly paid to and received by them as attorneys. Nor are Norton & Prewitt suing the state for a fee. Therefore we cannot properly and do not pass upon the question, in this proceeding, as to whether the relation of attorney and client actually existed between Norton & Prewitt and the state or the county and school districts, who are the real parties in interest.

The names of Norton & Prewitt were signed to the complaint as attorneys for the plaintiff (state). They so appear in the record of the proceedings and in the judgment. They had the execution issued, and placed the same in the hands of the sheriff. In *Conway County* v. *Little Rock & Ft. Smith R. Co.*, *supra*, it is said: "It was natural to suppose that the attorney who had obtained the judgment was the proper party to whom payment should be made." "Ordinarily," continues the court, "an attorney is authorized, by virtue of his retainer, to collect the judgment and execute, in the name of his client, a proper acquittance therefor. His authority does not cease upon the rendition of judgment, but continues until the money is made, unless he is sooner discharged. We are not aware of any rule of law that should vary the practice when the client

happens to be a municipal or *quasi* municipal corporation."
This furnishes a simple, reasonable and just rule for all
parties involved. As to the owner of the judgment, since he
has trusted or permitted the attorney of record to conduct the
litigation to a successful termination, and has received the
benefit of his labors in that capacity, he can therefore trust
him to receive the money collected by the sheriff. As to the
attorney, it places him, with reference to the fruits of his
labors, in dignified and honorable trust relationship to his
client. And as to the sheriff, while it devolves upon him the
responsibility of looking to the record to ascertain whom it
shows to be the attorney in the case, it provides him a safe and
convenient method for paying over the money to the proper
parties. Such is the reason and the letter of the statute. The
policy of these summary statutes is to punish only where there
has been some plain neglect of duty enjoined by the statute or
the order of the court. The statutes are declaratory of the
power inherent in courts of justice over their own officers to
prevent them from, or punish them for, committing acts of
dishonesty or impropriety calculated to bring contempt upon
the administration of the law. *In re Paschal*, 10 Wall.
491; 4 Blackstone, Comm. p. 283, star page 284; *in re
Pitman*, 1 Curtis (U. S. Ct. Ct.), 186. See, also, in this con-
nection, *Mundy* v. *Strong*, 31 Atl. 611.

He who would avail himself of the remedy by amerce-
ment for official deficiency under a summary statute must come
within both the letter and spirit of the law. *Moore* v. *McCliff*,
16 Ohio St. 50.

It is not pretended that the sheriff, in paying over the
money to the attorney of record, was acting in bad faith. On
the contrary, the record shows him most faithful and diligent
in his efforts to conform to the requirements of the law. While
this would not have exonerated him had he failed entirely, it
argues the righteousness of the rule which courts have adopted
to seize the slightest circumstance to relieve a conscientious and
vigilant officer, who has scrupulously endeavored to do his duty,
of the rigorous penalty usually denounced by such statutes.
Murfree, Sheriffs, § 947, and authorities cited.

It was never intended that resort should be had to sum-

mary proceedings where there has been no palpable dereliction on the part of the officer; where he has not subjected himself to the penalties prescribed.    The statute was not enacted as a substitute for the ordinary action at law to recover as for a debt or for money had and received.    The procedure is altogether different; the rights and defenses may not be the same. *Custer* v. *Agnew*, 83 Ill. 194; Murfree, Sheriffs, § 969.

Section 7192 of Sand. & H. Dig., which requires that "the sheriff or other officer collecting any money due to the state shall pay the same into the public treasury and obtain a quietus therefor, and not to the attorney general or any other attorney or agent employed in the collection of the same, or to any other person, unless otherwise directed by law," has reference solely to the state herself as the sovereign, and not to any of her political dependencies or subdivisions.    The "public treasury" there referred to is the state treasury.    The above section therefore has no application here, as the money collected belonged to the county and school districts, and could not go into the state treasury.

The judgment is therefore reversed, and the cause is dismissed

BUNN, C. J., concurs in the judgment, and thinks the cause should be dismissed without prejudice.

HUGHES, J.    I dissent from the reasoning and from the conclusions of the court in this case upon the following grounds:

First.    Because, in all suits for or against the state or county, it is made the duty of the prosecuting attorney to prosecute or defend.    He alone is the attorney in such cases. The state was the plaintiff here.    Sand. & H. Dig., §§ 6013, 6014, 6015.

Second.    Where the county has an attorney on salary, whose duty it is made by statute to prosecute and defend all suits for or against her, there is no power or authority in the county court to employ an assistant attorney.    The following cases are clear upon this proposition: *Butler* v. *Sullivan Co.*, 18 S. W. 1142; *Ramson* v. *Mayor*, 24 Barb. 226; *Clough* v. *Hart*, 8 Kas. 487; *Platt County* v. *Gerrard*, 12 Neb. 244; *Cuming Co.* v. *Tate*, 10 Neb. 193; *High* v. *Commissioners*, 68 Ind. 575.

There being no power to employ Norton & Prewitt, there

could be no ratification of their employment, as he who deals
with a corporation must know the extent of its power and
authority.   It therefore follows that Norton & Prewitt were not,
in contemplation of law, the attorneys of either the state or
the county, but volunteers.   The prosecuting attorney was the
attorney of the state and county.   Norton & Prewitt were in
the suit at the instance of Aven, who it is not pretended had
any authority to employ them.   Nor had the county court or
the school districts made any order to employ them, nor any ap-
propriation to pay for their services.   They were therefore
never employed in the case by any competent authority.   To
permit an unauthorized person to employ and pay lawyers for
the county and school districts, without consulting either,
would destroy all the safeguards the law hath thrown around
the fiscal system and interest of such municipal corporations,
and is not to be tolerated.   It is the duty and prerogative of
the county court and of the school districts to audit and settle
all claims against them.

The theory of the appellants, which is adopted by the
court, is that, in this summary proceeding, it is not competent
for the court to render judgment for the money which the
sheriff collected on execution and failed to pay over to the
proper party, because the appellant is entitled to have his rights
in the premises settled in an ordinary action at law, and is
entitled to a jury trial.   This is fallacious and untrue.   At
common law these summary proceedings would lie against an
officer, and it is only where the common law secured the right of
trial by jury that a party can complain that the statute attempts
to deprive him of such right.   The right to trial by jury was
not violated in this case.

Under the head of Summary Remedies on Official Bonds, in
2 Am. & Eng. Enc. Law, it is said:   "In many states judgment
may be rendered on an official bond on motion.   *   *   *
Such statutes are not unconstitutional as infringing the right
to a trial by jury.   The existing law enters into and becomes
part of a bond, and if the law authorizes summary proceedings
at the time the bond is executed, the parties are liable to the
operation of the law."   To the same effect are *Lewis* v. *Garrett,*
5 How. (Miss.) 434; *Wells* v. *Caldwell,* 1 A. H. Marshall

(Ky.), 441; *Burke* v. *Levy*, 1 Randolph (Va.), 2; *Vanzant* v. *Waddel*, 2 Yerger (Tenn.), |260; *McWhorter* v. *Marrs*, 1 Stew-(Ala.) 63; *Johnson* v. *Atwood*, 2 Stewart, 225; *Bank of Columbia* v. *Okely*, 4 Wheat. 235.

In the case of *Lewis* v. *Garrett*, 4 Howard (Miss.), 454, upon re-argument of this point, the supreme court of that state said: "The power to convict and punish in such cases in a summary way was considered to be inherent in the court, and as essential to the maintenance of its just authority and the due administration of the public justice of the country. This right was shown to be as ancient as the common law itself. As an officer of the court, the sheriff was always liable to punishment in this way. The constitution, in guarantying to the citizens of this state the right of trial by jury, did not intend to disturb the ancient and well-established jurisdiction of the several courts of the country, nor to change entirely the modes of trial, as they are regulated by the common law."

No jury trial was demanded. Had it been, there would have been no impropriety in granting it in the case at bar. There was no reason why the court should turn the plaintiff out to come into the same court, on the same cause of action, against the same defendants. *Burke* v. *Levy*, 1 Randolph (Va.), 2.

Neither the principal nor the sureties on the sheriff's bond had any right to complain. *Lewis* v. *Garrett*, 5 How. 434. The sheriff knew that the prosecuting attorney represented the state and county in the suit.

For the reasons set forth in the original opinion of the court in this cause, and the additional reasons herein, I am of the opinion that the motion for reconsideration should be overruled.